PATRICIA L. GLASER - State Bar No. 55668
pglaser@glaserweil.com
KERRY GARVIS WRIGHT - State Bar No. 206320
kgarviswright@glaserweil.com
RORY S. MILLER - State Bar No. 238780
rmiller@glaserweil.com
GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile:  (310) 556-2920

Attorneys for Defendants
Gurbaksh Chahal, Nikhil Sharma,
and Gravity4, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| YOUSEF KHRAIBUT,<br><br>        Plaintiff,<br><br>v.<br><br>GURBAKSH CHAHAL, et al.,<br><br>        Defendants. | CASE NO.: 3:15-cv-04463-CRB<br>Hon. Charles R. Breyer<br><br>**DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>DATE:    January 29, 2016<br>TIME:    10:00 a.m.<br><br>TRIAL DATE:   None Set |

TO THE CLERK OF COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 29, 2016 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Charles R. Breyer, Senior United States District Judge, in Courtroom 6, 17th Floor of the San Francisco Courthouse of the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, defendants Gurbaksh Chahal, Nikhil Sharma, and Gravity4, Inc. will and hereby do move the Court for an order compelling arbitration of Plaintiff's claims against them and staying the above-captioned matter. Defendants' motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, on the grounds that Plaintiff's claims against Defendants are subject to arbitration pursuant to a written arbitration agreement between Plaintiff and defendant Gurbaksh Chahal, which Plaintiff signed as a material condition of his affiliation with Gravity 4. Plaintiff, however, has refused to comply with this agreement.

Defendants' motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Michelle Louangamath and Kerry Garvis Wright, the records and pleadings on file with the Court in this matter, and on such other evidence or argument as may be presented at the hearing.

DATED: November 20, 2015

GLASER WEIL FINK HOWARD
AVCHEN & SHAPIRO LLP

By: _____
PATRICIA L. GLASER
KERRY GARVIS WRIGHT
RORY S. MILLER
Attorneys for Defendants
Gurbaksh Chahal, Nikhil Sharma,
and Gravity4, Inc.

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ..................................................................................................1
II.  STATEMENT OF RELEVANT FACTS .....................................................................1
III. ARGUMENT .........................................................................................................2
     A.   Governing Law ........................................................................................2
     B.   Any Challenge to the Arbitration Agreement is for the Arbitrator to Decide ..3
     C.   Plaintiff Signed a Binding Arbitration Agreement ...........................................4
          1.   The Arbitration Agreement Covers Plaintiff's Claims .........................4
          2.   The Arbitration Agreement is Not Unconscionable .............................5
IV.  CONCLUSION.....................................................................................................7

**TABLE OF AUTHORITIES**

Page

**FEDERAL CASES**

*AT&T Mobility, LLC v. Concepcion*,
    131 S. Ct. 1740 (2011) ................................................................................................... 2

*AT&T Tech. v. Communication Workers*,
    475 U.S. 643 (1986) ....................................................................................................... 3

*Bridge Fund Capital Corp. v. Fastbucks Franchise*,
    622 F.3d 996 (9th Cir. 2010) .......................................................................................... 2

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003) ......................................................................................................... 2

*Contec Corp. v. Remote Solution Co.*,
    398 F.3d 205 (2d Cir. 2005) ........................................................................................... 4

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002) ....................................................................................................... 4

*Fallo v. High-Tech Inst.*,
    559 F.3d 874 (8th Cir. 2009) .......................................................................................... 4

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ....................................................................................................... 3

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ......................................................................................................... 2

*Howsam v. Dean Witter Reynolds*,
    537 U.S. 79 (2002) ......................................................................................................... 3

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
    460 U.S. 1 (1983) ........................................................................................................... 2

*Oracle America, Inc. v. Myriad Group A.G.*,
    724 F.3d 1069 (9th Cir. 2013) ........................................................................................ 3

*Perry v. Thomas*,
    482 U.S. 483 (1987) ....................................................................................................... 2

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*,
    687 F.3d 671 (5th Cir. 2012) .......................................................................................... 4

*Qualcomm Inc. v. Nokia Corp.*,
    466 F.3d 1366 (Fed. Cir. 2006) ...................................................................................... 4

*Rent-A-Center, West v. Jackson*,
    561 U.S. 63 (2010) ......................................................................................................... 3

*Republic of Argentina v. BG Group PLC*,
    665 F.3d 1363 (D.C. Cir. 2012) ..................................................................................... 4

*Riley Mfg. Co. v. Anchor Glass Container Corp.*,
  157 F.3d 775 (10th Cir. 1998) ............................................................................................. 4

*Terminix Int'l Co. v. Palmer Ranch LP*,
  432 F.3d 1327 (11th Cir. 2005) ........................................................................................... 4

*United Steelworkers of Am. V. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960) ............................................................................................................. 4

**STATE CASES**

*Ajamian v. CantorCO2e, L.P.*,
  203 Cal. App. 4th 771 (2012) ............................................................................................... 5

*Armendariz v. Foundation Heath Psycare Servs., Inc.*,
  24 Cal. 4th 83 (2000) ........................................................................................................... 5

*Buckhorn v. St. Jude Heritage Med. Group*,
  121 Cal. App. 4th 1401 (Cal. Ct. App. 2004) ...................................................................... 4

*Dryer v. Los Angeles Rams*,
  40 Cal. 3d 406 (1985) .......................................................................................................... 4

*Engalla v. Permanente Med. Group, Inc.*,
  15 Cal. 4th 951 (1997) ......................................................................................................... 2

*Morris v. Redwood Empire Bancorp*,
  128 Cal. App. 4th 1305 (2005) ............................................................................................ 6

*Peng v. First Republic Bank*,
  219 Cal. App. 4th 1462 (2013) ............................................................................................ 6

*Stirlen v. Supercuts, Inc.*,
  51 Cal. App. 4th 1519 (1997) .............................................................................................. 5

**FEDERAL STATUTES**

9 U.S.C. § 1 ................................................................................................................................. 2
9 U.S.C. § 2 ................................................................................................................................. 2

**STATE STATUTES**

Cal. Civ. Code § 1670.5(a) ......................................................................................................... 5

**OTHER AUTHORITIES**

American Arbitration Association, Employment Arbitration Rule 6(a) .................................... 3

## I.      Introduction

By filing this lawsuit,[1] Plaintiff Yousef Khraibut has sought to publicize his claims against Defendants and to use the threat of continued negative publicity and attention as a cudgel to extract compensation that he was not owed from the Defendants.

Khraibut chose to file this suit in violation of a binding agreement to arbitrate all of his claims, and in violation of his obligations under a stringent non-disclosure agreement.  The Court should not reward such behavior, and should enforce the Arbitration Agreement that Khraibut signed and now attempts to evade.

## II.     Statement of Relevant Facts

Plaintiff Yousef Khraibut voluntarily and without coercion signed an "Employment and Nondisclosure Agreement" (the "Arbitration Agreement") with Defendant Gurbaksh Chahal acting in his capacity as Chief Executive Officer of defendant Gravity4, on August 8, 2014.

In early August 2014, Gravity4 began to use a new form of non-disclosure agreement for its employees.  Declaration of Michelle Louangamath, filed concurrently, ("Louangamath Decl.") at ¶ 3.  This new non-disclosure agreement governed both business information as well as personal information regarding the lifestyle and affairs of Gravity4 found and Chief Executive Officer Gurbaksh Chahal.  In addition to its substantive terms, the non-disclosure agreement included a provision that referred all disputes arising from or related to the agreement to arbitration.  Execution of the non-disclosure agreement was, by its terms, a condition of continued employment at Gravity4.

Michelle Louangamath, the executive assistant to Gravity4 CEO Gurbaksh Chahal and later Gravity4's Chief of Staff, was tasked with ensuring that all of the employees at the start-up company signed the non-disclosure agreement. *Id*.  She did so by emailing a blank copy of the agreement to all employees and asking them to review, sign, and return the agreement to her.  *Id*. Ms. Louangamath also printed a copy of the non-disclosure agreement and left it on each

---

[1] Khraibut had previously filed an earlier iteration of this lawsuit before the California Superior Court.  In what appears to be an exercise in forum-shopping, Khraibut dismissed that suit in order to re-file before this Court.

1  individual's desk. *Id.*

2      Plaintiff Yousef Khraibut did exactly that. He brought a hard copy of the signed agreement
3  to Ms. Louangamath's desk. *Id.* at ¶ 4. Notably, Khraibut did so without the need for any
4  reminders or other follow-up from Ms. Louangamath. *Id.* Ms. Louangamath added the signed
5  contract to Gravity4's files. *Id.* at ¶ 5. A copy of the contract as signed by Khraibut is attached to
6  her declaration as Exhibit A.

7  **III.   Argument**

8      **A.   Governing Law**

9      The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.,* was enacted to reverse longstanding
10 judicial hostility toward arbitration agreements and to place them upon the same footing as other
11 contracts. *See AT&T Mobility, LLC v. Concepcion,* 131 S. Ct. 1740, 1745 (2011); *Gilmer v.*
12 *Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991). Accordingly, section 2 of the Federal
13 Arbitration Act provides for the enforcement of an arbitration provision in any contract "evidencing
14 a transaction involving commerce." 9 U.S.C. § 2. The term "involving commerce" must be
15 interpreted as broadly as the Constitution permits, and does not require "showing any specific effect
16 upon interstate commerce." *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56 (2003).

17     "The [party seeking arbitration] bears the burden of proving the existence of a valid
18 arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears
19 the burden of proving by a preponderance of the evidence any fact necessary to its defense." *Bridge*
20 *Fund Capital Corp. v. Fastbucks Franchise,* 622 F.3d 996, 1005 (9th Cir. 2010) (quoting *Engalla v.*
21 *Permanente Med. Group, Inc.,* 15 Cal. 4th 951, 972 (1997)). Defeating an arbitration agreement is a
22 heavy burden; the Supreme Court has explained that arbitration agreements are presumed to be valid
23 and "must be rigorously enforce[d]." *Perry v. Thomas,* 482 U.S. 483, 490 (1987) (quotation
24 omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of
25 arbitration, whether the problem at hand is the construction of the contract language itself or an
26 allegation of waiver, delay or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v.*
27 *Mercury Construction Corp.,* 460 U.S. 1, 24-25 (1983).

28

### B. Any Challenge to the Arbitration Agreement is for the Arbitrator to Decide

Generally, the Court is charged with determining threshold questions such as the existence of an arbitration agreement covering this particular dispute. *Howsam v. Dean Witter Reynolds,* 537 U.S. 79, 84 (2002). There is, however, an exception to this general rule where "the parties clearly and unmistakably provided otherwise." *AT&T Tech. v. Communication Workers,* 475 U.S. 643, 649 (1986); *see also First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 (1995).

In such cases, a court examines the underlying contract to determine whether the parties have agreed to commit the question of arbitrability to an arbitrator. *Rent-A-Center, West v. Jackson,* 561 U.S. 63, 70 (2010).

Here, the Arbitration Agreement "clearly and unmistakably" assigns the question of its validity, scope, and application to an arbitrator, rather than the Court. By its terms, the Arbitration Agreement states that ***"any*** disputes or controversies arising from or relating to this Agreement or the Parties' performance hereunder, ***shall*** be subject to binding arbitration. . ." Louangamath Decl., Ex. A at p. 1 (emphasis added).

Furthermore, the Arbitration Agreement provides that "[a]ny arbitration will be administered by the American Arbitration Association ('AAA') in accordance with its Rules." *Id.* AAA Employment Arbitration Rule 6(a) clearly states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Declaration of Kerry Garvis Wright, filed concurrently, at Exhibit A. Therefore, any question as to the validity of the Arbitration Agreement or whether it applies to this dispute is assigned solely to the arbitrator. On this basis alone, the Court should compel arbitration. Indeed, "virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle America, Inc. v. Myriad Group A.G.,* 724 F.3d 1069, 1074-75 (9th Cir. 2013) (holding that incorporation of commercial arbitration rules constitutes sufficient "clear and unmistakable evidence") (collecting cases).[2]

---

[2] The Circuit Courts that hold that incorporation of arbitration rules constitutes "clear and unmistakable evidence" that the parties agreed to delegate questions of arbitrability to the arbitrator

**C.      Plaintiff Signed a Binding Arbitration Agreement**

Should the Court seek to go beyond the plain language of the Arbitration Agreement delegating all questions of interpretation and enforceability to the arbitrator, the Arbitration Agreement itself demonstrates that it covers the claims in this action and is valid, binding, and enforceable.

**1.      The Arbitration Agreement Covers Plaintiff's Claims**

To determine what claims are subject to arbitration, a court examines the contract through the lens of the presumption of arbitrability. *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 289 (2002). It is not Defendants' burden to prove that Plaintiff's claims in this suit are subject to the Arbitration Agreement, but rather Plaintiff must demonstrate that there is no permissible interpretation of the Arbitration Agreement that could possibly cover his claims. *See, e.g., United Steelworkers of Am. V. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83 (1960) (courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . . doubts should be resolved in favor of coverage."); *Buckhorn v. St. Jude Heritage Med. Group,* 121 Cal. App. 4th 1401, 1406 (Cal. Ct. App. 2004) (the burden falls on "the party opposing arbitration to demonstrate that an arbitration clause cannot be interpreted to require arbitration of the dispute.") (quotations omitted); *Dryer v. Los Angeles Rams,* 40 Cal. 3d 406, 414 (1985) (applying the *United Steelworkers* "positive assurance" standard).

Plaintiff will fail in any attempt to assert that the Arbitration Agreement ***cannot*** be read to cover the claims in this suit. This lawsuit, and Plaintiff's tactics in connection with it, demonstrate the applicability of the Arbitration Agreement. In that contract, Plaintiff agreed that he "will not

---

include the Second Circuit, *see Contec Corp. v. Remote Solution Co.,* 398 F.3d 205, 208 (2d Cir. 2005), the Fifth Circuit, *see Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.,* 687 F.3d 671, 675 (5th Cir. 2012), the Eighth Circuit, *see Fallo v. High-Tech Inst.,* 559 F.3d 874, 878 (8th Cir. 2009), the Eleventh Circuit, *see Terminix Int'l Co. v. Palmer Ranch LP,* 432 F.3d 1327, 1332 (11th Cir. 2005), and the Federal Circuit. *See Qualcomm Inc. v. Nokia Corp.,* 466 F.3d 1366, 1373 (Fed. Cir. 2006). Additionally, the D.C. Circuit held that a different set of arbitration rules containing a similar provision to the AAA rules also constituted clear and unmistakable evidence. *See Republic of Argentina v. BG Group PLC,* 665 F.3d 1363, 1371 (D.C. Cir. 2012). The Tenth Circuit is the only Circuit Court to reject this prevailing view. *See Riley Mfg. Co. v. Anchor Glass Container Corp.,* 157 F.3d 775, 777 & n.1, 780 (10th Cir. 1998).

disclose, share, transmit or otherwise communicate *any* Confidential Information" (defined as "highly confidential, proprietary, personal and/or sensitive information pertaining to Chahal and/or his business or personal affairs"). Louangamath Decl., Ex. A at p. 1. And yet, that is exactly what Plaintiff and his counsel have done by attempting to the cloak of the litigation privilege to spin a lurid (and false) tale of Mr. Chahal's personal and business conduct both before the Court and in the press in an effort to exact a settlement or otherwise harm Defendants' business and personal interests. This conduct alone demonstrates the applicability of the Arbitration Agreement's provisions to this suit.

The specific provision governing arbitration in the Arbitration Agreement is written broadly, and encompasses "any disputes or controversies arising from or relating to this Agreement or the Parties' performance hereunder." Louangamath Decl., Ex. A at p. 2. The use of these terms are the familiar "broad form" of an arbitration agreement, intended to capture the entirety of any disputes related to the subject matter of the contract, which, given Plaintiff's litigation tactics, this action does.

### 2. The Arbitration Agreement is Not Unconscionable

Under California law, a court may refuse to enforce a contract that was unconscionable at the time it was made, or it may limit the application of any unconscionable feature of that contract. Cal. Civ. Code § 1670.5(a). A plaintiff must prove that an arbitration agreement is **both** procedurally and substantively unconscionable in order to evade enforcement of its provisions. *See, e.g., Armendariz v. Foundation Heath Psycare Servs., Inc.,* 24 Cal. 4th 83, 114 (2000) (the "prevailing view is that [procedural and substantive unconscionability] must **both** be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability") (quoting *Stirlen v. Supercuts, Inc.,* 51 Cal. App. 4th 1519, 1533 (1997)) (alterations in *Armendariz*).

"Procedural unconscionability pertains to the making of the agreement; it focuses on the oppression that arises from unequal bargaining power and the surprise to the weaker party that results from hidden terms or the lack of informed choice." *Ajamian v. CantorCO2e, L.P.,* 203 Cal. App. 4th 771, 795 (2012) (citing cases). Meanwhile, "[a] provision is substantively unconscionable

if it involves contract terms that are so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms." *Morris v. Redwood Empire Bancorp,* 128 Cal. App. 4th 1305, 1322 (2005) (internal quotation omitted).

As noted above, it is Plaintiff[3]'s burden to prove that the Arbitration Agreement is unconscionable; Defendants need do nothing more at this time. However, in anticipation of Plaintiff's likely arguments, Defendants note that the Arbitration Agreement at issue here is short and written in plain English. All of its terms, including the arbitration provision, are presented in the same font size and type; nothing is hidden or in tiny print. Furthermore, as explained in the Louangamath Declaration, neither Khraibut nor any other Gravity4 employee were "put on the spot," but were instead allowed to review, sign, and return the agreement at their convenience.

Nor are the terms of the Arbitration Agreement unduly harsh. The agreement to arbitrate is mutual, and Gravity4 agreed to pay all of the fees associated with the arbitration. Furthermore, the use of the American Arbitration Association, a nationally known and respected organization whose rules are frequently used in arbitrations across the country, and which contain numerous procedural and substantive safeguards, demonstrates the substantive fairness of the Arbitration Agreement.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[3] Plaintiff may attempt to argue that the Arbitration Agreement is unconscionable because it does not physically attach the totality of the AAA Rules. This argument is without merit; the Arbitration Agreement provides a URL address for copies of the rules that is readily accessible to any individual with a computer and, in any event, courts have specifically held that there is no requirement to attach AAA rules to an arbitration agreement. *See, e.g., Peng v. First Republic Bank,* 219 Cal. App. 4th 1462, 1471-72 (2013) (holding that the defendant was not required to supply the AAA Rules to the plaintiff).

6

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION

CASE NO.: 3:15-CV-04463-CRB

1096751

IV. **Conclusion**

For the foregoing reasons, Defendants respectfully request that this Court enter an order (1) compelling Plaintiff Yousef Khraibut to pursue his claims solely in arbitration; and (2) staying all further proceedings in this action pending the outcome of said arbitration.

DATED: November 20, 2015

GLASER WEIL FINK HOWARD
AVCHEN & SHAPIRO LLP

By: _____
PATRICIA L. GLASER
KERRY GARVIS WRIGHT
RORY S. MILLER
Attorneys for Defendants
Gurbaksh Chahal, Nikhil Sharma,
and Gravity4, Inc.