HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
KRISTA L. BAUGHMAN (SBN: 264600)
kbaughman@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
Attorneys for Plaintiff Yousef Khraibut

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| YOUSEF KHRAIBUT,<br><br>        Plaintiff,<br><br>        v.<br><br>GURBAKSH CHAHAL, an individual;<br>NIKHIL SHARMA, an individual;<br>GRAVITY4, INC. d/b/a GRAVITY4<br>SOFTWARE, INC., a Delaware corporation;<br>and DOES 1-10,<br><br>        Defendants. | CASE NO. 3:15-cv-04463-CRB<br>Hon. Charles R. Breyer<br><br>**PLAINITFF'S OPPOSITION TO<br>DEFENDANTS' MOTION TO COMPEL<br>ARBITRATION**<br><br>DATE:  February 12, 2016<br>TIME:   10:00 a.m.<br><br>TRIAL DATE:  None Set |



1

## Table of Contents

2

I.      SUMMARY OF ARGUMENT ........................................................................... 1

3

II.     STATEMENT OF RELEVANT FACTS ......................................................... 2

4

        Chahal Recruits Khraibut For Employment And Illegally Brings Him To The U.S.......... 2

5

6       The Purported Agreement Between Chahal and Khraibut ................................. 4

7

III.    ARGUMENT ..................................................................................................... 5

8

        A.    Legal standards governing arbitration ..................................................... 5

9

        B.    There is no agreement to arbitrate in this case......................................... 6

10

11      C.    The Court must decide any challenge to the validity of the arbitration provision........ 7

12            1.    There is no "clear and unmistakable" delegation clause ...................... 7

13            2.    The purported delegation clause is revocable due to unconscionability............ 10

14                  a.    The purported delegation clause is procedurally unconscionable...................... 11

15
16                  b.    The purported delegation clause is substantively unconscionable...................... 12

17      D.    The arbitration clause is unenforceable on multiple grounds ..................................... 13

18            1.    The Agreement fails for want of consideration................................... 13

19            2.    The arbitration provision is not enforceable due to illegality ............................. 14

20            3.    The arbitration clause is unconscionable ........................................... 14

21
22      E.    Khraibut's claims do not fall within the scope of the arbitration provision ............... 14

23

IV.     CONCLUSION................................................................................................... 15

24

25

26

27

28



Plaintiff's Opposition to Defendants'                                    Case No. 3:15-cv-04463-CRB
Motion to Compel Arbitration

**Table of Authorities**

**Cases**

*Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277
(3d Cir. 2010)................................................................................................................6

*Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal. 4th 83 (2000)................................11

*Blake v. Ecker*, 93 Cal. App. 4th 728 (2001) ...............................................................11

*Bruni v. Didion*, 160 Cal. App. 4th 1272 (2008) .............................................................11

*Brydonjack v. Rieck*, 5 Cal. App. 2d 219 (1935) ............................................................13

*Carmona v. Lincoln Millennium Car Wash, Inc.,* 226 Cal. App. 4th 74 (2014)...........................12

*Cisneros v. American General Financial Services, Inc.*, C11-02869-CRB, 2012 WL 3025913
(N.D. Cal. 2012)....................................................................................................11, 12

*Duffens v. Valenti*, 161 Cal. App. 4th 434 (2008)...........................................................6

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*, 35 Cal. 3d 312 (1983)6

*Fitz v. NCR Corp.*, 118 Cal. App. 4th 702 (2004) ...........................................................13

*Glover v. Cal. State Univ. Fresno*, 2015 WL 5734418 (E.D. Cal. 2015) ................................6

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010) ...............................6, 14

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)..............................................14

*Kinney v. United Health Care Servs., Inc.*, 70 Cal. App. 4th 1322 (1999)............................11

*Meadows v. Dickey's Barbecue Rests. Inc.*, No. 15-cv-02139-JST, 2015 WL 7015396 (N.D. Cal.
2015) ...........................................................................................................................9

*Mohamed v. Uber,*  ---F.Supp.3d ----, No. C-14-5200 EMC, 2015 WL 3749716 (N.D. Cal. 2015)
........................................................................................................................passim

*Moody v. Metal Supermarket Franchising Am., Inc.*, No. 13-cv-5098-PJH, 2014 WL 988811
(N.D. Cal. 2014)..........................................................................................................9

*Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013) ....................7, 10

*Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659 (1993) ...............................11

*Perry v. Thomas,* 482 U.S. 483 (1987) .......................................................................6

*Pinela v. Neiman Marcus Group, Inc.*, 238 Cal.App.4th 227 (2015)..............................6, 7

iii



*Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594 (6th Cir. 2013)......................................................10

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010) ................................................................6, 7

*Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775 (10th Cir. 1998) ........................10

*Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899 (2015) ...................................................12

*Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574 (1960).....................................................14

*Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231 (2014) ........................................................6, 7, 8

*Tompkins v. 23andMe, Inc.*, 2014 WL 2903752 (N.D. Cal. 2014)..................................7, 9, 10, 11

*Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387 (2010) .......................................................12

*Zamani v. Carnes*, 491 F.3d 990 (9th Cir. 2007)..........................................................................15

*Zullo v. Sup.Ct.*, 197 Cal. App. 4th 477 (2011) .............................................................................12

**Statutes**

8 U.S.C. § 1324(1)(A).................................................................................................................7, 14

9 U.S.C. § 2....................................................................................................................................6

Cal. Civ. Code § 1550....................................................................................................................6

Cal. Civ. Code § 1608.................................................................................................................7, 14

Cal. Civ. Code §1670.5(a) ...........................................................................................................14

Cal. Code Civ. Proc. § 1281.2 .......................................................................................................6



# I.    SUMMARY OF ARGUMENT

Defendants Gravity4, Inc. ("Gravity4"), Nikhil Sharma ("Sharma") and Gurbaksh Chahal ("Chahal") (collectively, "Defendants") have moved that this Court enforce a document entitled "Employment and Nondisclosure Agreement" (the "Agreement"). Though Defendants misleadingly refer to this Agreement as an "Arbitration Agreement," it is actually a confidentiality agreement intended to protect "personal information regarding [Chahal's] lifestyle and affairs," as Defendants concede. The Agreement is between Plaintiff Yousef Khraibut ("Khraibut"), a Canadian citizen, and Chahal – not Gravity4, or Sharma. Khraibut, then a 19-year-old foreign national, was lured to the U.S. for employment under false pretenses by stronger and more sophisticated parties, and after several weeks of work without pay, and under abusive circumstances, was asked to sign a one-sided agreement for the sole benefit of Chahal – not Gravity4, his purported employer. Throughout his employment, Khraibut was denied his promised pay, stock, immigration sponsorship, job titles, and abuse-free working conditions, all of which facts underscore the improper basis for the Motion.

First, no agreement to arbitrate was ever formed, because the purported consideration for the Agreement and its arbitration provision – Khraibut's legal, paid employment with Gravity4 – was illusory, given that the agreement was with Chahal, not Gravity4, and the Agreement lacked a lawful purpose, as it purports to be with a foreign citizen who was never lawfully permitted to work in the U.S., due to Gravity4's refusal to process Khraibut's immigration paperwork.

Second, any challenge to the validity of the arbitration provision must be determined by this Court, as the parties did not "clearly and unmistakably" delegate arbitrability simply by incorporating a generic reference to "AAA rules" in the arbitration provision, without attaching those rules, particularly where the purported delegation clause also (and inconsistently) states that it is subject to the arbitration rules set forth in the California Code of Civil Procedure and pursuant to California law. Further, the purported delegation clause is both procedurally and substantively unconscionable in light of the disparity in bargaining power between the parties; the inconspicuous nature of the arbitration language in a misleadingly titled document; the failure to attach the allegedly applicable AAA rules; the lack of an opt-out provision concerning arbitration; and the unilateral power given to Chahal to modify any aspect of the Agreement.

1

1    Third, the arbitration provision is not enforceable due to unconscionability as well as

2    promissory fraud and illegality. Finally, as Khraibut's lawsuit concerns harm he suffered during and

3    after his employment with Gravity4, and not Khraibut's alleged obligation to maintain the confidence

4    of Chahal's personal information, Khraibut's claims are not within the scope of the Agreement. The

5    Agreement fails at every level, and Khraibut respectfully requests that this Court deny the Motion in

6    full, and allow the lawsuit to proceed in this forum.

7                    **II.      STATEMENT OF RELEVANT FACTS**

8            Gurbaksh Chahal is a digital advertising entrepreneur and the founder, chairman and CEO of

9    digital advertising company Gravity4. Yousef Khraibut is a 21-year-old Canadian who has interacted

10   with Chahal on business matters since he was 16, including doing consulting design work for

11   RadiumOne, another company founded by Chahal. Declaration of Yousef Khraibut In Support of

12   Opposition to Motion to Compel ("Khraibut Decl."), ¶ 2. Prior to the events at issue in the Complaint,

13   Khraibut looked up to Chahal as a mentor, who wielded significant influence over him. *Id.*

14           **Chahal Recruits Khraibut For Employment And Illegally Brings Him To The U.S.**

15           In June, 2014, Chahal had recently been fired as CEO of his prior company, RadiumOne, a

16   week after he pled guilty to assaulting his girlfriend in his home in 2013. Chahal then founded

17   Gravity4, a competitor to RadiumOne. Khraibut Decl., ¶ 3. On June 17, 2014, Chahal and his co-

18   founder, Dan Grigorovici, made a presentation to Khraibut to recruit him to join Gravity4 in a

19   leadership position. *Id.*, ¶ 4. Shortly thereafter, Khraibut and Chahal discussed terms by phone, with

20   Khraibut in Ontario, Canada, and Chahal in the U.S. *Id.*, ¶ 5. Khraibut and Chahal ultimately agreed

21   orally that Khraibut would be employed by Gravity4, with the terms including a specific salary, stock

22   options of 1% of the company, and immediate work visa sponsorship by Gravity4. *Id.*, ¶ 6. The terms

23   of the oral agreement did not include any discussion whatsoever of arbitration. *Id.*, ¶ 7.

24           Khraibut kept his side of the bargain, but Gravity4 never provided Khraibut with any

25   employment-related documents when he joined Gravity4 in June 2014 – indeed, Khraibut was the

26   company's third employee, and there was no human resources department or other administrative

27   infrastructure when he joined. *Id.*, ¶ 8.  Nor did Gravity4 ever process visa paperwork to make

28   Khraibut eligible for legal employment in the United States, as promised. *Id.*, ¶ 10. Instead,

1    Defendants paid for Khraibut to come to San Francisco to work at Gravity4. Chahal suggested that

2    Khraibut's airfare ticket be booked round-trip, with the return ticket to be cancelled later, so that

3    Khraibut would have a smooth encounter with U.S. immigration authorities. *Id.*

4         Khraibut began work for Gravity4 on June 22, 2014, on Chahal's insistence that he begin work

5    immediately, even before his visa paperwork came through, because Chahal wanted to launch

6    Gravity4 on his birthday, July 17, 2014. *Id.*, ¶ 11. During his employment, Khraibut worked 20-hour

7    days without pay, under abusive working conditions, and was housed in an apartment in the same

8    building in which Chahal lived, for Chahal's convenience. *Id.*, ¶¶ 12-13.  Defendants never made

9    Khraibut a legal resident of the U.S.; instead, Chahal suggested that Khraibut become authorized to

10   work in Bermuda or Ireland, and yet continue work in the U.S. as if he had a proper visa. *Id.*, ¶ 14;

11   Khraibut Decl., Exh. B. Though Khraibut routinely followed up with Chahal concerning the status of

12   his immigration papers, employment documents documenting salary, stock options and benefits,

13   Gravity4 provided none of these. *Id.*, ¶ 14.  Indeed, a frequent retort by Chahal to Khraibut's demands

14   for immigration status updates, employment and stock paperwork, was to say "first let's make you

15   legal," clearly and repeatedly telling Khraibut he wasn't "legal" in the United States, and therefore

16   undermining, in Khraibut's mind, the validity of any documents placed in front of him to sign under

17   any pretenses. *Id.*, ¶ 15. In fact, Chahal repeatedly and explicitly threatened Khraibut with his "illegal"

18   status, holding it over him as a weapon to force Khraibut to do Chahal's bidding. *Id.*

19        When the relationship between Khraibut and Chahal broke down in or around September

20   2014, due to Chahal's escalating abuse of and threats against Khraibut, Chahal used Khraibut's lack of

21   legal residency as a weapon against Khraibut, including by stating that Khraibut had "2 minutes to get

22   your sorry ass up to my place…before I book your ass to Toronto now. And I am not joking." *Id.*, ¶

23   19; Khraibut Decl., Exh. C. Khraibut was not paid by Gravity4 at any time during his employment

24   with the company, nor was any Gravity4 employment documentation signed, nor was Khraibut's visa

25   paperwork ever processed. *Id.*, ¶ 21.  Only after Khraibut was fired abruptly a week after he refused to

26   lie to the police about Chahal's assault on a second woman in September, 2014 – while Chahal was

27   still on probation from a prior assault – did Gravity4 (not Chahal) pay Khraibut overdue wages, but

28   still refused to provide the stock options and other consideration promised. *Id.*, ¶ 22.

3

**The Purported Agreement Between Chahal and Khraibut**

The Agreement upon which Defendants rely purports to have been signed by Khraibut on August 8, 2014 – nearly two months after he began working for Gravity4. Louangamath Decl. In Support of Motion, Exh. A. The Agreement states that it is between Chahal and Khraibut, only, and recites as consideration "the offer of employment from Gravity4, and Chahal's agreement to engage [Khraibut] as an employee of the Company." *Id.* No actual terms of employment are contained in the Agreement; rather, the crux of the contract is to ensure "[Khraibut's] obligation to maintain in the strictest confidence the personal and confidential information" of Chahal, as well as to report to Chahal the "unauthorized disclosure or use" of such information by other persons. *Id.* The Agreement further states that if Khraibut "accept[s] compensation for any unauthorized disclosure or use" of Chahal's personal information, Khraibut "shall be liable to pay to Chahal all such compensation." *Id.*

Far from being an employment agreement with Gravity4, the Agreement addresses Chahal's apparent paranoia concerning the disclosure of information about Chahal's "lifestyle and affairs" (as Defendants put it), not the business of Gravity4, or Khraibut's job duties, compensation, and related matters. Under the heading "No Modification Absent Express Writing; Governing Law; Enforcement Procedures," the Agreement provides, in full:

(a) This Agreement may not be modified or amended absent the express, written consent of Chahal.

(b) Employee agrees that any disputes or controversies arising from or relating to this Agreement or the Parties' performance hereunder, shall be subject to binding arbitration under the arbitration rules set forth in the California Code of Civil Procedure Section 1280 through 1294.2, including Section 1283.05 and pursuant to California law. Employee voluntarily agrees and accepts that in consideration for the terms and conditions of this Agreement, they waive any right to a trial by jury for any disputes or controversies concerning this Agreement or the Parties' performance hereunder. Any arbitration will be administered by the American Arbitration Association ("AAA") in accordance with its rules. Employee Acknowledges [sic] that these AAA Rules are available online at http://www.adr.org/aaa. Chahal or Gravity4 shall pay for the costs or [sic] any arbitration; however, Employee acknowledges that the Arbitrator may award attorneys' fees and costs to the prevailing party, in addition to other remedies available at law or in equity.

*Id.*, Exh. A. Neither Sharma nor Gravity4 signed the Agreement, and clearly as a corporation, Gravity4 has no "personal . . . information" to protect.

In her declaration, Ms. Louangamath testifies that in or about August 2014 (two months after

4

1   Khraibut began work), she sent a copy of the Agreement to "all employees" by email, and also left a

2   printed copy of the Agreement on each employee's desk. Louangamath Decl., ¶ 3. However, no such

3   email is attached to her declaration, and Khraibut never received an email of this nature. Khraibut

4   Decl., ¶ 9. Nor does Khraibut have any recollection of receiving or signing a printed copy of the

5   Agreement. *Id.* In over a dozen letters between counsel from May, 2015 through September, 2015,

6   Gravity4's counsel never mentioned the existence of an arbitration agreement, and after a September

7   14, 2015 written demand, refused to produce the Agreement. Declaration of Harmeet K. Dhillon In

8   Support Of Opposition, ¶ 6 ("Dhillon Decl."). Khraibut never received an electronic version of the

9   Agreement, and thus was never given an opportunity to click directly on the embedded hyperlink.

10  Khraibut Decl., ¶ 9. Even if Khraibut had clicked on the hyperlink, it leads only to the AAA's

11  homepage, *not* to any specific set of rules. Dhillon Decl., ¶ 3. Moreover, unlike other employees,

12  Khraibut was never presented with an actual employment agreement confirming his wages, stock

13  options, and other conditions of employment; was not paid regularly (or at all, during his

14  employment); and was frequently told he was not "legal" by Chahal, including one instance two days

15  *after* he allegedly signed the Agreement. Khraibut Decl., ¶¶ 15-16; Exh. C. Defendants did not

16  mention the existence of an alleged arbitration agreement until weeks after this lawsuit was filed.

17  Dhillon Decl., ¶¶ 7-9.[1]

18                          **III.    ARGUMENT**

19          **A.    Legal standards governing arbitration**

20          This Court's analysis of the Motion involves four parts. First, the Court must determine

21  whether Khraibut validly assented to the terms of the contract – or, was an agreement to arbitrate ever

22  formed? *See, e.g., Mohamed v. Uber,* ---F.Supp.3d ----, No. C-14-5200 EMC, 2015 WL 3749716 at

23  *5 (N.D. Cal. 2015) ("Uber"). Second, if the Court finds valid contractual assent, it determines

24  whether it has the power to adjudicate the validity of the Agreement's arbitration provision. *Id.* Parties

25  _____

26  [1]  Defendants' counsel failed to invoke arbitration even though they had done so in the first case
    Khraibut's counsel had filed this year against Chahal and Gravity4 in state court, for plaintiff Erika

27  Alonso. In that case, the San Francisco Superior Court denied Chahal and Gravity4's motion to
    compel arbitration, on grounds that an agreement to arbitrate was not formed. Dhillon Decl., ¶ 9;

28  Order Denying Def.s' Mot. to Compel Arb., *Alonso v. Chahal and Gravity4, Inc.*, CGC-15-545426,
    (2015) attached to Dhillon Decl. as Exh. B.



Plaintiff's Opposition to Defendants'
Motion to Compel Arbitration                                    Case No. 3:15-cv-04463-CRB

may contractually agree to arbitrate this gateway issue as long as *both* of the following requirements are met: 1) the parties' intent to so delegate arbitrability is "clear and unmistakable," *and* 2) the delegation clause is not revocable under state contract defenses to enforcement, such as fraud, illegality, or procedural and substantive unconscionability. *See id., citing Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 85 (2010); *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 241 (2014); *Pinela v. Neiman Marcus Group, Inc.*, 238 Cal.App.4th 227, 239 (2015). Third, the Court considers whether the arbitration provision is enforceable, including whether the arbitration clause is invalidated by generally applicable contract defenses, such as fraud, illegality, or unconscionability. *Uber,* 2015 WL 3749716 at *5. Finally, the Court must decide whether all (or any) claims asserted in the lawsuit fall within the scope of the arbitration agreement. *Id.*

The Agreement clearly states that it is subject to "the arbitration rules set forth in the California Code of Civil Procedure Section 1280 through 1294.2, including Section 1283.05 and pursuant to California law," and thus, California state law governs these questions. *See, e.g. Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 288 (3d Cir. 2010) ("parties [may] contract to arbitrate pursuant to arbitration rules or procedures borrowed from state law," rather than the FAA).

### B.      There is no agreement to arbitrate in this case

It is "well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). State contract law governs validity of an agreement to arbitrate. *See* 9 U.S.C. § 2; Cal. Code Civ. Proc. § 1281.2; *Perry v. Thomas,* 482 U.S. 483, 492, n.9 (1987). Claims of contract illegality are determined by a judge, not the arbitrator, because such claims raise public policy questions. *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*, 35 Cal. 3d 312, 316-317, n. 2 (1983); *Duffens v. Valenti*, 161 Cal. App. 4th 434 (2008) ("[c]ontracts that are contrary to express statutes or to the policy of express statutes…are illegal contracts. Any such illegality voids the entire contract").

No agreement to arbitrate was formed as a matter of law, because the arbitration provision lacked sufficient, lawful consideration and a lawful object, and was in violation of public policy. *See Glover v. Cal. State Univ. Fresno*, 2015 WL 5734418 (E.D. Cal. 2015); Cal. Civ. Code § 1550.



1   Though the consideration recited in the Agreement and repeated in the arbitration section was

2   employment with Gravity4, Defendants concede that the Agreement was only with Chahal. Moreover,

3   Khraibut – a foreign citizen with no U.S. work visa – was *never legally employable*, in light of

4   Defendants' failure to process his immigration paperwork. *See* Cal. Civ. Code § 1608; 8 U.S.C. §

5   1324(1)(A) (illegal to hire undocumented aliens under both California and federal law). Khraibut was

6   not paid what he was promised during his employment, either by Gravity4 or Chahal; nor does the

7   agreement have a lawful purpose.[2] Chahal even admitted Khraibut was yet to be made "legal" on

8   August 10, 2014 – two days *after* Khraibut allegedly signed the Agreement on August 8, 2014.

9   Khraibut Decl., ¶15; Exh. C. This, alone, should end the inquiry.

10   **C.   The Court must decide any challenge to the validity of the arbitration provision**

11         Parties to an arbitration agreement may agree to delegate to the arbitrator, instead of a court,

12   questions regarding the validity of an arbitration provision itself. *Rent-A-Center,* 561 U.S. at 68; *Tiri,*

13   226 Cal. App. 4th at 241.  However, an effective delegation clause requires two elements: first, the

14   language of the clause must be clear and unmistakable; and second, the delegation must not be

15   revocable under state contract defenses to enforcement, such as fraud, illegality, or unconscionability.

16   *See Tiri*, 226 Cal. App. 4th at 241; *Pinela*, 238 Cal. App. 4th at 239.  Neither prerequisite is met here.

17         **1.   There is no "clear and unmistakable" delegation clause**

18         Under both the FAA and California law, the default rule is that courts adjudicate arbitrability,

19   and "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the

20   parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Uber*, 2015 WL 3749716 at

21   *8 (internal citations omitted), *citing Tompkins v. 23andMe, Inc.*, 2014 WL 2903752 at *11 (N.D. Cal.

22   2014) ("Tompkins"); *see also Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1072 (9th

23   Cir. 2013) ("Oracle"). The "clear and unmistakable" test establishes a "heightened standard" to evince

24   delegation. *See Rent-A-Center*, 561 U.S. at 79.

25         There is *no* delegation clause in the Agreement, much less a "clear and unmistakable" one.

26   Defendants claim that the following two sentences contained within the arbitration provision

---

[2] The housing provided to Khraibut did not constitute consideration, as it was incidental to the job and was located in Chahal's building, for Chahal's convenience, not Khraibut's. Khraibut had no need for housing apart from the needs of the Gravity4 job – which itself was illegal. Khraibut Decl., ¶ 13.



Plaintiff's Opposition to Defendants'
Motion to Compel Arbitration                                    Case No. 3:15-cv-04463-CRB

1    constitute a delegation clause 1) "any disputes or controversies arising from or relating to this

2    Agreement or the Parties' performance hereunder, shall be subject to binding arbitration under the

3    arbitration rules set forth in the California Code of Civil Procedure sections 1280 through 1294.2,

4    including section 1283.05 and pursuant to California law"; and 2) "[a]ny arbitration will be

5    administered by the American Arbitration Association in accordance with its Rules." *See* Motion,

6    p.3.[3] Read together, this language is internally inconsistent, as it indicates that California law will

7    govern the underlying arbitration, while unspecified AAA "rules" will govern only its

8    "administration." This is patently *not* the type of "delegation clause" that California courts have found

9    to be "clear and unmistakable." *Cf. Tiri*, 226 Cal. App. 4th at 237 (delegation clause stating "[t]he

10   Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to

11   resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this

12   Agreement…"; *not* considering as a "delegation clause" a provision that any arbitration "shall be in

13   accordance with the current AAA Employment Rules"); *Uber*, 2015 WL 3749716 at *4 (delegation

14   clause found where there was clear delegation of issues of "enforceability, revocability or validity of

15   the arbitration provision" to the arbitrator, in the contract itself).

16        The Agreement's vague reference to "AAA Rules" does not constitute "clear and

17   unmistakable" delegation. The Motion argues that the AAA's Employment Arbitration Rules (out of

18   over 10,000 pages in 192 various possible sets of rules found on the AAA website, Dhillon Decl., ¶¶

19   3-4) should apply, and wishfully cites to Rule 6(a) of those Rules, concerning delegation. Motion, p.3.

20   Neither the Employment Arbitration Rules nor Rule 6(a) are mentioned in the Agreement which, as

21   noted above, is *not* an employment agreement at all, but rather a personal privacy agreement for

22   Chahal. *See* Louangamath Decl., Exh. A. Given that Khraibut's claims encompass not only

23   employment claims but also several other claims, it is not clear on what basis Defendants aspire to

24   apply the AAA Employment Rules, or how an employee would know to look to a specific set of AAA

25   rules of the 192 on offer at the AAA website, to parse delegation, or other abstruse legal concepts.

26        The Hon. Judge Lucy Koh recently held that similar language in a consumer arbitration

27

28   _____

[3] In quoting the first sentence, Defendants misleadingly omit the second half of that sentence, concerning how California law governs the arbitration. *See* Motion, p.3.

Plaintiff's Opposition to Defendants'
Motion to Compel Arbitration                                    Case No. 3:15-cv-04463-CRB



agreement stating that "[a]ny Disputes shall be resolved by final and binding arbitration under the rules and auspices of the American Arbitration Association" was *not* sufficiently specific to amount to "clear and unmistakable evidence" of delegating arbitrability to an arbitrator, including because "[t]he AAA maintains multiple sets of rules for different types of disputes, such as commercial, consumer, and employment," and the arbitration clause – like the one here – did not identify *any* of these specific rules. *See Tomkins*, 2015 WL 2903752 at *10; *referencing* https://www.adr.org/aaa/faces/rules. Judge Koh noted that "this language forces a customer to comprehend  the import of the 'rules and auspices' of the AAA; locate those rules independently; determine that the AAA's Commercial Rules apply . . . and then specifically identify Rule R-7(a) to learn of the delegation provision." *Id.* at *12. Judge Koh observed that had the opposing party wanted to avoid any doubt about delegation, it could have included explicit delegation language, or at least reproduced the particular AAA rule on this point. *Id.* at *13. Further, as "a generic reference to the AAA rules does not necessarily incorporate all *future* versions of the rules . . . a plain recitation of the AAA rules does not always suffice to delegate arbitrability, *even between relatively sophisticated* parties." *Id.* (emphasis added).[4]

The Agreement's generic reference to external, unspecified "AAA Rules" and inclusion of a hyperlink to the AAA's main page in a paper document was insufficient to put Khraibut – a 19-year-old Canadian with no legal training or experience dealing with U.S. arbitration law – on notice that he would be waiving a Court's review of this important gateway issue. *See Tomkins*, 2014 WL 2903752 at *12. Even had Khraibut received an electronic version of the Agreement which allowed him to click directly on the hyperlink (he did not), Khraibut would still have had to navigate to the "Rules and Forms" tab, then to the "Rules" subsection, then determine whether to look under the "Active

---

[4] In other contexts, this Court similarly has required literal specificity when incorporating external arbitration rules, to ensure adequate notice. *See, e.g. Moody v. Metal Supermarket Franchising Am., Inc.*, No. 13-cv-5098-PJH, 2014 WL 988811 at *10 (N.D. Cal. 2014) (refusal to apply AAA Rule R-7(a) (delegating arbitrability) in a franchise case where the "agreements themselves do not quote this portion of Rule 7, nor do they even refer specifically to Rule 7); *Meadows v. Dickey's Barbecue Rests. Inc.*, No. 15-cv-02139-JST, 2015 WL 7015396 (N.D. Cal. 2015) (incorporation of an agreement that incorporated AAA rules insufficient to delegate arbitrability, particularly where parties unsophisticated); *see also Uber*, 2015 WL 3749716 at *10 ("whether the language of a delegation clause is 'clear and unmistakable' should be viewed from the perspective of the particular parties to the specific contract at issue. What might be clear to sophisticated counterparties is not necessarily clear to less sophisticated employees or consumers").

9

Rules" section, "Archived Rules" section, or the "Most Commonly Used Rules" section to independently locate the Employment Arbitration Rules among 192 different sets of rules that might potentially apply, and then specifically identify Rule 6(a) to learn of the delegation provision. Dhillon Decl., ¶ 4. Per *Tompkins*, this is the antithesis of "clear and unmistakable" delegation.

Defendants cite *Oracle* to argue that incorporation of the AAA rules constitutes an agreement to arbitrate arbitrability. Motion, p. 3. But this inapt citation actually proves Khraibut's point. *Oracle* is distinguishable because it addressed – as an issue of first impression in the Ninth Circuit – whether incorporation of the UNCITRAL (United Nation Commission on International Trade Law) arbitration rules in "commercial contracts" between "sophisticated parties" served to delegate arbitrability. *Oracle*, 724 F.3d at 1075. As noted by Judge Koh, though *Oracle* "surveyed other Circuits' holdings regarding incorporation of both the UNCITRAL and AAA rules, and concluded that incorporation in the contract at issue was effective . . . *Oracle* expressly limited its holding" and held that "as long as an arbitration agreement is between sophisticated parties to commercial contracts, those parties shall be expected to understand that incorporation of UNCITRAL rules delegates questions of arbitrability to the arbitrator." *Tompkins*, 2014 WL 2903752 at *11, *citing Oracle*, 724 F.3d at 1075. *Oracle* expressly "declined to extend this result to consumers." *Tompkins*, 2014 WL 2903752 at *13. Nor does (or should) *Oracle* extend to non-sophisticated parties (such as Khraibut) or to one-sided confidentiality contracts of adhesion in disparate bargaining power situations (such as the Agreement).[5]

## 2. The purported delegation clause is revocable due to unconscionability

Even if the Court finds the purported delegation clause to be "clear and unmistakable," it is not enforceable because it is revocable due to unconscionability, and Khraibut hereby revokes it. "A finding of unconscionability has both a procedural and a substantive element." *Tomkins*, 2014 WL

---

[5] The out-of-Circuit cases cited in the Motion are not binding on this Court, were decided before the Ninth Circuit's *Oracle* decision, and are distinguishable based on the purely commercial nature of the contracts at issue, and the relatively sophisticated parties. Other Circuits have held to the contrary. *See Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775 (10th Cir. 1998) (finding no specific intent to submit arbitrability to an arbitrator, despite incorporation of AAA rules); *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594 (6th Cir. 2013) (no "clear and unmistakable" assignment to arbitrator of class-wide arbitrability issue by generic incorporation of "then-current Commercial Rules" of AAA and reference to "federal substantive and procedural laws relating to arbitration").

2903752 at *5. The procedural component concerns oppression and surprise. *Id.*; *see also Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1664 (1993). The substantive component considers whether the contract allocates the risks of the bargain in an objectively unreasonable or unexpected manner. *Tomkins*, 2014 WL 2903752 at *5. To be unenforceable, a contract must be both substantively and procedurally unconscionable, though there may be an inverse relation between the two elements. *Id.* Finally, unconscionability cannot be determined only by looking at the face of the contract; the inquiry must also look into the circumstances under which the contract was executed, its purpose, and effect. *Cisneros v. American General Financial Services, Inc.*, C11-02869-CRB, 2012 WL 3025913 at *4 (N.D. Cal. 2012); *see also Blake v. Ecker*, 93 Cal. App. 4th 728, 743 (2001).

### a. The purported delegation clause is procedurally unconscionable

Procedural unconscionability concerns "the manner in which the contract was negotiated and the circumstances of the parties at that time." *Kinney v. United Health Care Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (1999). The focus is on two factors: oppression and surprise. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "Oppression" arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice, and "surprise" involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms. *See Bruni v. Didion*, 160 Cal. App. 4th 1272, 1288 (2008).

In this case, the purported delegation clause is both oppressive and surprising. First, as Ms. Louangamath testifies, the Agreement (and thus, the purported delegation clause) was drafted solely by Gravity4 and was provided to Khraibut (and "all employees") without any discussion or "follow-up." Louangamath Decl., para 3-4. The Agreement was allegedly provided to Khraibut in August 2014, when Khraibut – then only 19-years-old and a foreign national – was working 20-hour days without pay, under abusive and misleading working conditions, with no pay, and threats to "book [his] ass back to Toronto" because he was in the United States illegally, due to Gravity4's inducement and then failure to honor its immigration sponsorship promise. Khraibut Decl., ¶¶ 2, 12, 19; Exh. D. Khraibut was a relatively unsophisticated party in a weaker bargaining position than Chahal. This alone establishes an oppressive adhesion contract. *See Armendariz*, 24 Cal. 4th at 113.

1   Adding to the procedural unconscionability, the purported delegation clause (and, indeed, the

2   entire arbitration provision) is not drawn to Khraibut's attention, but is set forth inconspicuously on

3   the last page of a mislabeled contract under an inapt heading entitled "No Modification Absent

4   Express Writing; Governing Law; Enforcement Procedures." "The size of the text of the [subject

5   language] is invariably the same as the surrounding text . . . [and is] not bolded or otherwise

6   distinguished from the surrounding contractual terms." *Uber*, 2015 WL 3749716 at *21. These factors

7   demonstrate that arbitration language "as a whole is highly inconspicuous . . . [and] surprising." *Id.*

8   In addition, the purported delegation clause fails to attach or specifically refer to the applicable

9   AAA rules that supposedly will govern an arbitration. This has the effective of "forc[ing]" Khraibut

10  "to go to another source to learn the full import" of what he is signing, and weighs in favor of an

11  unconscionability finding. *Cisneros*, 2012 WL 3025913 at *6; *see also Zullo v. Sup.Ct.*, 197 Cal. App.

12  4th 477, 485-46 (2011) (finding procedural unconscionability when rules not attached even though no

13  evidence in conflict with the written agreement); *Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th

14  387, 393-94 (2010) (collecting cases holding that a failure to provide a copy of the arbitration rules to

15  which employee would be bound, supported a finding of procedural unconscionability). The AAA

16  website contains at least 192 sets of rules, of approximately 10,000 pages plus in length. Dhillon

17  Decl., ¶ 3. Finally, the purported delegation clause does not contain an opt-out provision allowing

18  Khraibut to avoid arbitration entirely. *See Uber*, 2015 WL 3749716 at *12-13(finding procedural

19  unconscionability in Uber's arbitration clause, even where it contained an opt-out provision). The

20  arbitration language is procedurally unconscionable on multiple grounds.

21              **b.  The purported delegation clause is substantively unconscionable**

22  Substantive unconscionability centers on the terms of the agreement, and whether those terms

23  are overly harsh, unduly oppressive, or unreasonably favorable to one party. *See, e.g., Sanchez v.

24  Valencia Holding Co., LLC*, 61 Cal. 4th 899, 821 (2015). "The paramount consideration in assessing

25  substantive unconscionability is mutuality." *Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal.

26  App. 4th 74, 85 (2014). A court need not find much substantive unconscionability when there is a

27  high level of procedural unconscionability. *Cisneros*, 2012 WL 3025913 at *6.

28  The purported delegation clause (and entire arbitration clause) is set forth together with

12



1    language stating "[t]his Agreement may not be modified or amended absent the express, written

2    consent of Chahal." Louangamath Decl., Exh. A. Chahal is unilaterally given the power to materially

3    change the arbitration clause (or any other terms of the Agreement), without prior notice to or

4    authorization by Khraibut. Chahal could conceivably change the arbitration clause to state that all fees

5    must be paid by Khraibut, or to exempt from arbitration those claims likely to be brought by Chahal,

6    or to require arbitration in another continent, which changes clearly would be unconscionable. *See,*

7    *e.g., Fitz v. NCR Corp.*, 118 Cal. App. 4th 702 (2004). The terms of the delegation are thus so unduly

8    oppressive and unreasonably favorable to one party, that they must not be enforced. Balanced on a

9    sliding scale with the many procedurally unconscionable terms discussed above, the purported

10   delegation clause was clearly unconscionable at the time it was made, and is thus revocable.

11            **D.      The arbitration clause is unenforceable on multiple grounds**

12            The arbitration provision is unenforceable for the same reasons that the purported delegation

13   language is unenforceable, including want of consideration, illegality, and unconscionability.

14            **1.      The Agreement fails for want of consideration**

15   As discussed above in Section III(B), the entire purported Agreement is invalid for want of

16   consideration. Defendants are expected to argue that "continued employment" is sufficient

17   consideration for a mid-employment agreement to arbitration a dispute. However, where, as here,

18   continued employment is recited in the Agreement as the consideration, yet the defendant employer,

19   Gravity4, *never paid the employee* during his four months of employment, including failing to pay the

20   promised salary, stock options, and procurement of immigration sponsorship to make Khraibut "legal"

21   (a deficiency that Chahal, on behalf of Gravity4, both caused and repeatedly used to keep Khraibut

22   working for free while being abused, Khraibut Decl., ¶¶ 12, 15), then the Agreement, like any other

23   contract, is unenforceable because one side procured it with promised consideration that was not

24   delivered. Having failed to live up to any aspect of its side of the employment bargain from the very

25   start, Gravity4 cannot rely upon Chahal's alleged Agreement with Khraibut, nor can Sharma, and

26   certainly, neither can Chahal. *Brydonjack v. Rieck*, 5 Cal. App. 2d 219, 224 (1935) (holding that since

27   there was a complete failure of consideration, the contract of employment was invalid).

28

---

13

Plaintiff's Opposition to Defendants'

Motion to Compel Arbitration                                              Case No. 3:15-cv-04463-CRB

1

2.     **The arbitration provision is not enforceable due to illegality**

2

As discussed in section III(B), as both California and federal law prohibit the hiring of

3

undocumented alien workers, which Khraibut indisputably was at the time he was asked to sign it, the

4

arbitration provision is illegal and contrary to public policy, and is not enforceable. The Agreement is

5

premised on the concept that Khraibut was a legal employee of Gravity4, and indeed that is the sole

6

consideration recited in the Agreement. The Agreement is accordingly void. Cal. Civ. Code § 1608; 8

7

U.S.C. § 1324(1)(A) (illegal to hire undocumented aliens under both California and federal law).

8

3.     **The arbitration clause is unconscionable**

9

The arbitration language that the Defendants seek to enforce here, is unconscionable for the

10

same reasons as discussed in section III(C)(2), and on those grounds should not be enforced. Cal. Civ.

11

Code §1670.5(a). As discussed above, Khraibut has established ample evidence to support findings of

12

both procedural and substantive unconscionability sufficient to void *any* contract under California law

13

(the law applicable to the Agreement, as discussed above), including an agreement to arbitrate.

14

E.     **Khraibut's claims do not fall within the scope of the arbitration provision**

15

A dispute as to whether an arbitration clause in a contract applies to a particular type of

16

controversy is for the court, not the arbitrator, to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537

17

U.S. 79 (2002). "[A]rbitration is a matter of contract and a party cannot be required to submit to

18

arbitration any dispute which he has not agreed so to submit." *Steelworkers v. Warrior & Gulf Nav.*

19

*Co.*, 363 U.S. 574, 582 (1960). "(A) court may order arbitration of a particular dispute only where the

20

court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co.*, 561 U.S. at 297

21

(emphasis in original).

22

The arbitration provision, even if otherwise found valid despite the ample showing above that

23

it is not, does not cover Khraibut's claims in this lawsuit. The Complaint sets forth employment-

24

related claims, including wrongful termination, workplace discrimination and harassment, and labor

25

code violations, as well as claims for defamation, invasion of privacy, and infliction of emotional

26

distress. The lawsuit does *not* concern a dispute or controversy arising from or relating to Khraibut's

27

alleged obligation to maintain the confidence of the "personal information regarding [Chahal's]

28

lifestyle and affairs" (Motion, p.1), but rather, concerns the harm inflicted on Khraibut by Defendants

14

during and after his short employment with Gravity4, including defamation by both Chahal and Sharma nearly a year after Khraibut was fired. Were the arbitration clause contained in a valid *employment contract* between Khraibut and Gravity4 specifying wages, benefits, equity, title, working conditions and the like, the situation might be different, but Gravity4 wrongfully denied Khraibut proper employment and stock agreements, claiming he first needed to be "made legal," Khraibut Decl. ¶ 15; Exh. C. Chahal admitted Khraibut was not "legal" and therefore tried to justify failing to pay Khraibut the promised salary and stock, days *after* Khraibut allegedly signed the Agreement. *Id*. The Agreement is with Chahal only; benefits Chahal only, in his individual capacity; has nothing to do with Khraibut's employment and tort claims – including claims concerning the post-employment conduct of Sharma, also not a signatory to the Agreement – and throwaway lines in the Agreement purporting to broaden it, but unsupported by lawful consideration, do not save it.[6] On the basis of scope of the alleged Agreement alone, none of the claims in the Complaint are susceptible to arbitration, and the Motion should be denied.

## IV.    CONCLUSION

There are multiple, independent, and cumulative reasons to deny the Motion. First, there is no enforceable agreement to arbitrate any dispute set forth in the Complaint. The purported Agreement itself is void for lack of consideration and illegality. Even if the Agreement is not void, it is unenforceable due to multiple aspects of procedural and substantive unconscionability. All of these issues are for this Court, and not an arbitrator, to determine. For the foregoing reasons, Plaintiff Yousef Khraibut respectfully requests that the Court deny Defendants' motion to compel arbitration, and allow the case to proceed in this forum.

Date:  December 18, 2015                        DHILLON LAW GROUP INC.

                                    By:

                                    _____
                                    Harmeet K. Dhillon
                                    Krista L. Baughman
                                    Attorneys for Plaintiff Yousef Khraibut

---

[6] Plaintiff anticipates that Defendants will raise new arguments for the first time in their reply brief, but this Court need not consider any such arguments. *See Zamani v. Carnes*, 491 F.3d 990, 996 (9th Cir. 2007).



Plaintiff's Opposition to Defendants'
Motion to Compel Arbitration                                 Case No. 3:15-cv-04463-CRB