United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   YOUSEF KHRAIBUT,                          No. C15-04463 CRB

12          Plaintiff,                         **ORDER GRANTING MOTION TO**
                                               **COMPEL ARBITRATION**
13     v.

14   GURBAKSH CHAHAL, ET AL.,

15          Defendants.
     _____/
16

17          Now pending is Defendants' Motion to Compel Arbitration.  Defendant Gurbaksh

18   Chahal is a digital advertising entrepreneur and founder of Defendant Gravity4, Inc.

19   (Gravity4), an online advertising technology company based in San Francisco.  Plaintiff

20   Yousef Khraibut, another entrepreneur and Canadian citizen, brings suit against Chahal,

21   Gravity4, and Gravity4 employee Nikhil Sharma, alleging claims arising from his

22   employment, including failure to pay promised wages under an alleged oral employment

23   agreement, wrongful termination, and harassment.  See generally Compl. (dkt. 1).

24   Defendants now move to compel arbitration, relying on a document entitled "Employment

25   and Nondisclosure Agreement" (NDA), and more specifically on the arbitration provision

26   contained in section 2(b) of that document (Arbitration Provision).  Louangamath Decl. (dkt.

27   15-1) ¶¶ 5–6, Ex. A.  Defendants contend that the Arbitration Provision covers the

28   Complaint's allegations and delegates to an arbitrator not only the substance of the dispute,

     but also a preliminary adjudication on the question of arbitrability.  See generally Mot. (dkt.

United States District Court
For the Northern District of California

15).  As discussed below, the parties have clearly and unmistakably delegated the issue of arbitrability to an arbitrator, neither the implicit delegation clause nor the arbitration provision are sufficiently unconscionable to deny arbitration, and the application of the provision to the claims is not "wholly groundless."  Accordingly, the Court GRANTS the Motion to Compel Arbitration.

## I.    BACKGROUND

According to the Complaint, in June 2014, Defendants or their agents made Khraibut an oral employment offer and paid to fly him from Canada to the Bay Area to join Gravity4. Compl. ¶¶ 43, 46.  Gravity4 was in its nascent stages and Chahal invited Khraibut to join a small group of founders, allegedly promising him an equity stake, a senior management/executive role with the company, assistance with immigration to obtain a work visa, rent, a salary, and cofounder credit.  Id. ¶¶ 37–42.  Apparently the parties never committed those employment terms to paper.  Id. ¶ 42.  His employment ended on or about September 30, 2014.  Id. ¶¶ 225–28.  Khraibut alleges that during Khraibut's short employment with Gravity4, he witnessed Chahal perpetrate a litany of unsavory acts and that his refusal to engage in some of those acts resulted in his continuing harassment and summary termination.  Id.[1]

Khraibut appears to have signed the NDA in August 2014.  Louangamath Decl. Ex. A at 2.  The NDA contains an arbitration provision, which Defendants now move to enforce. Mot. at 1.  The Arbitration Provision reads as follows:

//

_____

[1] Many of the specific allegations involve Chahal's prior conviction for domestic violence and an interaction that Khraibut observed between Chahal and his purported girlfriend.  Compl. ¶¶ 22–36, 131–50, 183–94.  The specifics are not immediately relevant to the Motion before the Court, and do not affect its outcome.

1

2

3

4

5

6

7

> Employee agrees that any disputes or controversies arising from or relating to this Agreement or the Parties' performance hereunder, <u>shall be subject to binding arbitration</u> under the arbitration rules set forth in the California Code of Civil Procedure Section 1280 through 1294.2, including Section 1283.05 and pursuant to California law.  Employee voluntarily agrees and accepts that in consideration for the terms and conditions of this Agreement, they [sic] waive any right to a trial by jury for any disputes or controversies concerning this Agreement or the Parties' performance hereunder.  <u>Any arbitration will be administered by the American Arbitration Association ("AAA") in accordance with its Rules.  Employee [a]cknowledges that these AAA Rules are available online at http://www.adr.org/aaa.</u>  Chahal or Gravity4 shall pay for the costs or [sic] any arbitration; however, Employee acknowledges that the Arbitrator may award attorneys' fees and costs to the prevailing party, in addition to other remedies available at law.

8   Louangamath Decl., Ex. A at § 2(b) (emphasis added).  The entire NDA is two pages, three

9   sections, and six subsections; it contains no material terms of employment beyond the

10  following:

11

12

13

> Employee agrees and acknowledges that this Agreement and him or her [sic] compliance herewith are material conditions of him or her [sic] employment with Gravity4, Inc. . . . .  Employee willingly and voluntarily enters into this Agreement in consideration for the offer of employment from Gravity4, and Chahal's agreement to engage him or her as an [sic] company employee.

14

15

> (a)     Employee's obligations set forth in this Agreement are continuing in nature.  They shall remain in effect during and after Employee's employment at Gravity4.

16

17

> (b)     Employee understands and acknowledges that while him or her [sic] employment is terminable at will, him or her [sic] breach of or non-compliance with this Agreement shall constitute good cause for termination. . . .

18

> (d)     This Agreement shall be interpreted and enforced in conjunction with Employee's <u>written agreements</u> with Gravity4.

19

20  <u>See generally</u> <u>id.</u> (emphasis added).  The NDA also makes references to the signatory's

21  "work[] for Chahal," and purports to be an agreement not to divulge "Personal and

22  Confidential Information" for "any purpose or reason other than their work for Chahal" or

23  risk paying compensatory and punitive damages "to Chahal."  <u>Id.</u>, Ex. A.

24      Khraibut filed suit on September 28, 2015, alleging that he did not receive any of the

25  promised benefits for the work he provided, and that he was subjected to various forms of

26  harassment and discrimination.  <u>See generally</u> Compl.  Defendants now seek to compel

27  arbitration and to stay the case based on the Arbitration Provision.  <u>See generally</u> Mot.

28

**United States District Court**
For the Northern District of California

3

**United States District Court**
For the Northern District of California

## II.    LEGAL STANDARD

The Federal Arbitration Act (FAA) provides that an agreement to submit commercial disputes to arbitration shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 4 of the FAA requires that "private agreements to arbitrate are enforced according to their terms."  Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 579 (1989).  A party may therefore petition a United States District Court for an order directing that "arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

Generally, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986).  However, courts have developed a "liberal federal policy favoring arbitration agreements."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24–25 (1983).  Under this presumption in favor of arbitration, a court should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  AT&T Techs., 475 U.S. at 650.  A district court's role under the FAA is limited to determining "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether that agreement encompasses the dispute at issue.  If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms."  Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000); see also Howsam v. Dean Witter Reynolds, 537 U.S. 79, 84 (2002).  The Supreme Court, however, has recognized that "parties can agree to arbitrate [the] 'gateway' question[] of 'arbitrability' . . ." and clearly and unmistakably delegate that antecedent decision itself to an arbitrator.  Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 78 (2010).

If a delegation clause is "clear and unmistakable," a court must still decline to enforce the clause if the delegation itself is unconscionable or otherwise unenforceable under the FAA.  See id. at 71–74.  If not unconscionable, the district court's inquiry is "limited . . . [to] whether the assertion of arbitrability is 'wholly groundless.'"  Qualcomm Inc. v. Nokia

United States District Court
For the Northern District of California

Corp., 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law) (citing Dream Theater, Inc. v. Dream Theater, 124 Cal. App. 4th 547 (2004)).

After this gateway analysis is complete, if a court finds that there was no clear and unmistakable delegation or that the provision was wholly groundless, a court may proceed with the common inquiry into a provision's procedural unconscionability or other defect that might render it unenforceable.  However, where a court finds that the parties have empowered an arbitrator to decide arbitrability, the court's role is narrowed from deciding whether there is an applicable arbitration agreement to only deciding whether there is a valid delegation clause.  Id. at 2779.  In that circumstance, the traditional questions of contract formation, validity, revocation, and unconscionability should fall to the arbitrator.

## III.   DISCUSSION

Defendants move to compel arbitration of this dispute and the threshold decision whether to arbitrate.  Defendants argue that the Arbitration Provision's incorporation of the AAA's rules automatically places the agreement under the auspices and rules of the AAA. See Mot. at 3.  Khraibut counters that such incorporation does not constitute "clear and unmistakable" evidence of a valid agreement to delegate due to ambiguity regarding which AAA rules would apply; he further argues that an imbalance in the sophistication of the parties renders the Provision unconscionable and therefore unenforceable.  See Opp'n. (dkt. 23) at 7–10.  Khraibut's arguments are not persuasive.

### A.   Choice of Law

As an initial matter, the parties dispute what law governs the arbitrability of this case. See Mot. at 2; Opp'n at 5–6.  Federal law governs arbitrability disputes by default where the purported agreement is covered by the FAA and the parties have not clearly and unmistakably designated that nonfederal arbitrability law applies.  Brennan v. Opus Bank, 796 F.3d 1125, 1129 (9th Cir. 2015) (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)).

**United States District Court**
For the Northern District of California

1   The Ninth Circuit held in <u>Brennan</u> that the FAA governs employment agreements

2   because the FAA applies to any contract, like the present one, "evidencing a transaction

3   involving commerce." <u>See</u> 9 U.S.C. § 2; <u>Brennan</u>, 796 F.3d at 1129.  While the NDA's

4   precise scope is debatable, the Complaint here does "evidence" or "touch" matters covered

5   by the agreement, through both the NDA's reference to an employment agreement and in the

6   Complaint's numerous allegations involving "Personal or Confidential" information under

7   the NDA.  Louangamath Decl., Ex. A; <u>see, e.g.</u>, Compl. ¶¶ 131–94; <u>see also</u> <u>Ulbricht v.</u>

8   <u>Overstock.com, Inc.</u>, 887 F. Supp. 2d 924, 931 (N.D. Cal. Aug. 15, 2012).

9   For "any arbitration agreement within the coverage of the [FAA] . . . the court is to

10  make th[e] [arbitrability] determination by applying the federal substantive law of

11  arbitrability." <u>Mitsubishi Motors</u>, 473 U.S. at 626.  As in <u>Brennan</u>, the Arbitration Provision

12  here does not clearly and unmistakably indicate that California's law of arbitrability should

13  apply because it states only that "any disputes or controversies . . . shall be subject to binding

14  arbitration under . . . the California Code of Civil Procedure." <u>See</u> Louangamath Decl., Ex.

15  A at 2(b).  So, while the Arbitration Provision is clear that California's procedural rules apply

16  "<u>during</u> arbitration, it says nothing about whether California's law governs the question [of]

17  whether certain disputes are to be submitted to arbitration in the first place." <u>See</u> <u>Brennan</u>,

18  796 F.3d at 1129 (emphasis in original).  Thus, federal arbitrability law applies.

19  **B.      Delegation of Arbitrability**

20  While the Court normally rules on arbitrability, both state and federal cases instruct

21  that a court can refer a dispute to arbitration where it finds two factors.  First, there must be

22  "clear and unmistakable" evidence that the parties intended for an arbitrator to decide

23  questions of arbitrability.  <u>See</u> <u>First Options of Chi., Inc. v. Kaplan</u>, 514 U.S. 938, 944–45

24  (1995); <u>see also</u> <u>Poweragent, Inc. v. Elec. Data Sys. Corp.</u>, 358 F.3d 1187, 1191 (9th Cir.

25  2004); <u>Dream Theater Inc. v. Dream Theater</u>, 124 Cal. App. 4th 547, 550–57 (2004).

26  "[W]here the parties' agreement includes an agreement to follow a particular set of

27  arbitration rules—such as the AAA Rules—that provide for the arbitrator to decide questions

28  of arbitrability, the presumption that courts decide arbitrability falls away, and the issue is

United States District Court
For the Northern District of California

decided by the arbitrator." Bank of Am., N.A. v. Micheletti Family P'ship, No. 08-02902 JSW, 2008 WL 4571245, at *6 (N.D. Cal. Oct. 14, 2008) (White, J.); see also Anderson v. Pitney Bowes, Inc., No. C 04-4808 SBA, 2005 WL 1048700, at *2–4 (N.D. Cal. May 4, 2005) (Armstrong, J.); Dream Theater, 124 Cal. App. 4th at 557.  However, even if parties clearly and unmistakably delegate arbitrability to an arbitrator, the delegation clause may still be unenforceable if it is unconscionable.  Mohamed v. Uber Techs., Inc., Nos. C-14-5241 EMC; C-14-5241 EMC, 2015 WL 3749716, at *12–17 (N.D. Cal. June 9, 2015) (Chen, J.). Second, if there is clear and unmistakable evidence of an intent to delegate, a court should inquire as to whether the assertion of arbitrability is "wholly groundless." Qualcomm Inc. v. Nokia Corp., 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law).

Khraibut argues that a slightly different inquiry follows a district court's determination that delegation was clear and unmistakable, but either analysis reaches the same result.  Khraibut follows the wording in Rent-A-Center requiring that a delegation clause also not be revocable under state contract defenses such as fraud, illegality, or procedural and substantive unconscionability.  See Opp'n at 6 (citing Rent-A-Center, 561 U.S. at 85; Tiri v. Lucky Chances, Inc., 226 Cal. App. 4th 231, 241 (2014)).  However, as discussed below, none of the defenses have merit here, and thus the Court reaches the same result  under Qualcomm or Rent-A-Center.

The Ninth Circuit has held that "[v]irtually every circuit to have considered the issue has determined that incorporation of . . . arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." Oracle America, Inc. v. Myriad Group A.G., 724 F.3d 1069, 1074 (9th Cir. 2013).  The Oracle court explicitly limited that holding to the facts before it—a commercial contract between sophisticated parties. However, subsequent Ninth Circuit jurisprudence expressly leaves open the possibility that courts could find clear and unmistakable delegation where unsophisticated parties form non-commercial contracts.  See Brennan, 796 F.3d at 1130.  The Brennan court's reasoning defers to the AAA's own Rules on jurisdiction, which state in relevant part that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections

United States District Court
For the Northern District of California

with respect to the existence, scope, or validity of the arbitration agreement."  Wright Decl. (dkt. 15-2) Ex. A.  Such a holding puts the Ninth Circuit in line with a number of other circuits which require only inclusion of the AAA Rules, and no further or more specific instructions, to find sufficient evidence of delegation.[2]

### 1.    The Delegation is Clear and Unmistakable

Khraibut first argues that there was no clear and unmistakable consent to delegate the issue of arbitrability because <u>Oracle</u> is limited to cases involving commercial disputes between sophisticated parties.  Opp'n at 7.  In that case, the Ninth Circuit found that the corporate parties before it had implicitly incorporated a set of arbitration rules into their agreement, thus delegating arbitrability, though it expressly declined to extend this result to consumers.  <u>Oracle</u>, 724 F.3d at 1075.  Khraibut relies on a 2014 Northern District decision, which reasoned that under <u>Oracle</u>, an unsophisticated party to a non-commercial or consumer contract could not have been expected to divine which set of AAA rules applied without explicit enunciation in the arbitration provision.  <u>See</u> <u>Tompkins v. 23andMe, Inc.</u>, Nos. 13-5682; 14-00294; 14-00429; 14-01167; 14-01191;14-01258; 14-01348; 14-01455, 2014 WL 2903752, at *10–13 (N.D. Cal. June 25, 2014) (Koh, J.).  The Arbitration Provision here does not specify which AAA rules will govern disputes, and its wording tracks the agreement in <u>Tompkins</u>.  The court in <u>Tompkins</u> found that there were "multiple layers of ambiguity about which AAA rules govern," where the arbitration provision stated that "[a]ny disputes shall be resolved by final and binding arbitration under the auspices of the [AAA]."  <u>Id.</u> at *2, 10.

Khraibut contends that because there are many sets of AAA rules, the provision here, which fails to identify which set of rules applies (commercial, construction, employment, etc.), is insufficient to demonstrate "clear and unmistakable" evidence of delegation.  <u>See</u> Opp'n at 9.  He then argues, again based on <u>Tompkins</u>, that <u>Oracle</u>'s presumptive delegation to an arbitral body also does not extend to "non-sophisticated parties (such as Khraibut)."

---

[2] <u>See, e.g.</u>, <u>Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.</u>, 678 F.3d 671, 675 (5th Cir. 2012); <u>Republic of Arg. v. BG Grp. PLC</u>, 665 F.3d 1363, 1371 (D.C. Cir 2012); <u>Fallo v. High-Tech Inst.</u>, 559 F.3d 874, 878 (8th Cir. 2009); <u>Qualcomm</u>, 466 F.3d at 1366 (Fed. Cir. 2006); <u>Terminix Int'l Co. v. Palmer Ranch LP</u>, 432 F.3d 1327, 1332 (11th Cir. 2005); <u>Contec Corp. v. Remote Sols. Co.</u>, 398 F.3d 205, 208 (2d Cir.  2005); <u>Awuah v. Coverall N. Am, Inc.</u>, 554 F.3d 7, 10–12 (1st Cir. 2009).

1 Opp'n at 10.  Khraibut's reliance on Tompkins is outdated.

2   In Brennan, a 2015 case, the Ninth Circuit seems to reject Khraibut's interpretation of

3 Oracle, holding that incorporation of the AAA rules into an employment contract without

4 specific incorporation of the AAA Employment Rules can "constitute[] clear and

5 unmistakable evidence that contracting parties agreed to arbitrate arbitrability."  Brennan,

6 796 F.3d at 1130.  While the Brennan court declined to extend its holding to consumer

7 contracts, it stressed that the limitation "should not be interpreted to require that the

8 contracting parties be sophisticated or that the contract be 'commercial' before a court may

9 conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence

10 of the parties' intent."  Id.  The circuit court added that its holding "does not foreclose the

11 possibility that this rule could also apply to unsophisticated parties."  Id.  Importantly, the

12 circuit court concluded that such a ruling brings it in line with all circuits that have ruled on

13 the issue of delegation except the Tenth.  See id. at 1131; Riley Mfg. Co. v. Anchor Glass

14 Container Corp., 157 F.3d 775, 777 n.1, 780 (10th Cir. 1998).

15   The contract at issue in Brennan was an at-will employment contract.  See Brennan,

16 796 F.3d at 1131.  While it is not clear that the NDA here truly is an employment contract

17 (where obvious ambiguity exists in its reference to a separate, written agreement with

18 Gravity4, see Louangamath Decl. Ex. A § 1(d)), the circuit court's ruling in Brennan is more

19 analogous to our facts than the consumer/commercial contract at issue in Tompkins.  There

20 are differences between employment contracts and the commercial contract in Oracle, but

21 those differences are "irrelevant to [the court's] determination whether these parties'

22 incorporation of the AAA rules shows a clear and unmistakable intent to delegate

23 arbitrability to an arbitrator."  Brennan, 796 F.3d at 1131.

24   Given the Ninth Circuit's holding in Brennan, district courts should defer to the

25 AAA's Rules on arbitrability, and those Rules grant decisions of arbitrability to a AAA

26 arbitrator.  See Wright Decl. Ex. A.  Further, the AAA Employment Rules go on to state that

27 "[t]he parties shall be deemed to have made these rules a part of their arbitration agreement

28 whenever they have provided for arbitration by the [AAA] . . . of any employment dispute

without specifying particular rules." AAA Emp't Arbitration Rules and Mediation Procedures, Rule 1.[3] Identical wording appears in the AAA's Commercial Arbitration rules, so regardless of what type of contract the NDA is, the same language applies and does not create enough ambiguity or confusion to defeat a "clear and unmistakable" showing according to <u>Brennan</u>. <u>See</u> AAA Commercial Arbitration Rules, Rule 1.[4]

Courts in this district have consistently followed this reasoning before and since <u>Oracle</u>. <u>See, e.g.</u>, <u>Zenelaj v. Handybook Inc.</u>, 82 F. Supp. 3d 968 (N.D. Cal. 2015) (Henderson, J.); <u>Galen v. Redfin Corp.</u>, Nos. 14-cv-05229-TEH; 14-cv-05234-TEH, 2015 WL 7734137 (N.D. Cal. Dec. 1, 2015) (Henderson, J.); <u>Kimble v. Rhodes Coll., Inc.</u>, No. 10-5786-EMC, 2011 WL 2175249, at *2–4 (N.D. Cal. June 2, 2011) (Chen, J.) (finding that reference to the AAA Rules manifests "clear and unmistakable evidence of the parties' agreement to arbitrate arbitrability"); <u>Clarium Capital Mgmt. LLC v. Choudhury</u>, No. 08-5157-SBA, 2009 WL 331588, at *5 (N.D. Cal. Feb. 11, 2009) (Armstrong, J.) ("When the arbitration agreement explicitly incorporate[s] rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."); <u>Visa USA, Inc. v. Maritz, Inc.</u>, No. 07-05585-JSW, 2008 WL 744832 (N.D. Cal. Mar. 18, 2008) (White, J.) (holding the same); <u>Anderson</u>, 2005 WL 1048700, at *2–4 (same).

In <u>Zenelaj</u>, the court held that "when viewed within the context of [Oracle's] reasoning, as well as the great weight of prevailing case law, it is likely that while <u>Oracle America</u>'s holding limited itself to sophisticated parties, it does not support Plaintiffs' contention that <u>only</u> sophisticated parties can 'clearly and unmistakably' delegate the issue of arbitrability by incorporating the AAA Rules." <u>Zenelaj</u>, 82 F. Supp. 3d at 973 (emphasis in original). Judge Henderson's decision in <u>Galen</u> reinforces the <u>Zenelaj</u> ruling, holding that "[a] reference to the AAA rules can be sufficient to constitute clear and unmistakable intent

---

[3]Available at https://www.adr.org (follow "Rules and Forms" menu; then follow "Rules" hyperlink) (last visited Jan. 22, 2016).

[4] Available at https://www.adr.org (follow "Rules and Forms" menu; then follow "Rules" hyperlink) (last visited Jan. 22, 2016).

United States District Court
For the Northern District of California

to delegate." <u>Galen</u>, 2015 WL 7734137, at *6.  In <u>Galen</u>, the purported arbitration provision "left ambiguous which set of rules would apply—AAA Commercial Rules or AAA Labor and Employment Rules"—but the incorporation still constituted clear and unmistakable evidence of delegation.  <u>Id.</u> at *7.  And while the plaintiff in <u>Galen</u> was at least minimally sophisticated (a real estate broker with a state-issued license), the difference is not enough to reach a different result in our case after the strong suggestion in <u>Brennan</u>.  Further, there is some evidence that Khraibut was at least minimally sophisticated.  <u>See</u> Mullen Decl. (dkt. 26-1) at ¶¶ 1–4, Exs. 1–2 (Khraibut is a savvy entrepreneur in his own right, given his other dealings in the business world).  Accordingly, the Court finds that there was clear and unmistakable intent to delegate.

## 2.      The Arbitration Provision is not "Wholly Groundless"

If a court finds that the parties "clearly and unmistakably" intended to delegate arbitrability to an arbitrator, the district court's inquiry is "limited . . . [to] whether the assertion of arbitrability is 'wholly groundless.'"  <u>Qualcomm</u>, 466 F.3d at 1371.[5]  "The 'wholly groundless' inquiry allows the [C]ourt to prevent a party from 'asserting any claim at all, no matter how divorced from the parties' agreement, to force an arbitration."  <u>Id.</u> at 1373 n.5.

> [T]he district court should look to the scope of the arbitration clause and the precise issues that the moving party asserts are subject to arbitration.  Because any inquiry beyond a "wholly groundless" test would invade the province of the arbitrator, whose arbitrability judgment the parties agree to abide by . . . , the district court need not, and should not, determine whether [plaintiff's claims] are in fact arbitrable.  If the assertion of arbitrability is not "wholly groundless," the district court should conclude that it is "satisfied" pursuant to section 3 of the [FAA].

<u>Zenelaj</u>, 82 F. Supp. 3d at 975 (quoting <u>Qualcomm</u>, 466 F.3d at 1374).

The arbitration provision in <u>Zenelaj</u> covered "any dispute, controversy or claim related to this Agreement."  <u>Id.</u>  Here, the Arbitration Provision covers "any disputes or controversies arising from or relating to this Agreement or the Parties' performance thereunder."  Additionally, as in <u>Zenelaj</u>, "a review of the complaint does not foreclose the

---

[5]Neither party addresses this prong but the Court is obligated to consider it as part of the delegation analysis.

possibility that Plaintiff's claims relate to the agreement." See United Steelworkers of Am. v. Warrior Gulf Navigation Co., 363 U.S. 574, 582–83 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.") (emphasis added).

Khraibut's claims plausibly relate to the NDA for a number of reasons, even if the true nature of the agreement as a whole remains murky. The NDA is titled "Employment and Nondisclosure Agreement," and Khraibut's claims are employment-related. See generally Louangamath Decl. Ex. A; Compl. The agreement refers to "employee," "an employee of the company," "[e]mployee's employment at Gravity4," and "[e]mployee's written agreements with Gravity4." Louangamath Decl., Ex. A. It is also a reasonable conclusion that, even if the NDA is not an employment agreement, Khraibut put the NDA and its appurtenant provisions at issue by incorporating "confidential information" (i.e., information "pertaining to Chahal and/or his business or personal affairs") into the Complaint. See generally Compl.

If a court finds that the assertion of arbitrability is even loosely related to the claims, "it should stay the action pending a ruling on arbitrability by the arbitrator." Zenelaj, 82 F. Supp. 3d at 975 (citing Qualcomm, 466 F.3d at 1374). "When undertaking the 'wholly groundless' inquiry, the district court should look to the scope of the arbitration clause and the precise issues that the moving party asserts are subject to arbitration." Id. 1374. It is unclear exactly what the NDA's drafters hoped to encompass with the confusing references to separate written employment agreements with Gravity4 that never materialized, oaths of loyalty and payments of penalties "to Chahal," and Chahal's "[p]ersonal and [c]onfidential [i]nformation." See Louangamath Decl. Ex. A. Regardless, the Arbitration Provision's broad and inclusive language appears, at minimum, to be grounded in an oral agreement between Khraibut and Gravity4, and Khraibut did include many allegations in his Complaint that could plausibly arise from his signed agreement in the NDA. See, e.g., Compl. ¶¶ 187–88 ("Chahal also threatened [his girlfriend] by stating that Chahal had seen wire

12

**United States District Court**
For the Northern District of California

transfers from [her] affluent father in Korea to [her] husband, ostensibly compensation for the 'green card' relationship. . . . On the early morning of September 17, Chahal had an altercation with [her] in his bedroom, as she later reported to the police.").

The connection between Khraibut's claims and the NDA are not "wholly groundless," and thus an arbitrator should rule on the issue of arbitrability under the AAA's Employment Rules.

### C.     Plaintiff's Alternate Grounds for Denial are Similarly Unconvincing

Khraibut also argues that the Arbitration Provision is void for lack of consideration. Opp'n at 13. Grounds for declaring an arbitration agreement unenforceable are determined by "ordinary state-law principles that govern the formation of contracts." Circuit City, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (quoting First Options, 514 U.S. at 944). Under California law, "a written instrument is presumptive evidence of consideration." Cal. Civ. Code § 1614. Further, "all the law requires for sufficient consideration is the proverbial 'peppercorn.'" San Diego City Firefighters, Local 145 v. Bd. of Admin, 206 Cal. App. 4th 594, 619 (2012). In the employment context, Chahal's/Gravity4's "promise to be bound by the arbitration process itself serves as adequate consideration" for the formation of a valid and enforceable contract. See Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1108 (9th Cir. 2002). Under both California and Ninth Circuit law, the NDA provides adequate consideration.

Khraibut further argues that the Arbitration Provision is unlawful, presumably in memorializing the employment of an undocumented worker or in offering consideration solely to that effect. Opp'n at 14. The object of a contract must be lawful, meaning that it must not conflict with express statutes or public policy. Cal. Code Civ. Proc. § 1550. If a contract has a single object, and the object is unlawful (whether in whole or in part), the entire contract is void. Cal. Code. Civ. Proc. § 1598. Khraibut makes too great a logical leap, however, in arguing that the object of the NDA (assuming it is an employment contract at all) was to have an undocumented alien serve as a Gravity4 executive. See Opp'n at 1, 14. In fact, the NDA is silent on Khraibut's travel from Canada, and nearly silent on the essential

**United States District Court**
For the Northern District of California

terms of employment.  <u>See</u> Louangamath Decl., Ex. A.  Khraibut concedes that the NDA, "far from being an employment agreement with Gravity4, . . . addresses Chahal's apparent paranoia concerning the disclosure of information . . . not the business of Gravity4, or Khraibut's job duties, compensation, and related matters."  Opp'n at 4.  Khraibut's attempt to invalidate the arbitration portion of the NDA based on its object to employ him is unconvincing.

Khraibut next argues, with supplemental references at the motion hearing, that the NDA and its implicit delegation clause are sufficiently unconscionable to deny arbitration. <u>See</u> Opp'n at 10–12.  The Court disagrees.  Under California law, "unconscionability has both a 'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided results.'"  <u>Armendariz v. Found. Health Psychcare Servs., Inc.</u>, 24 Cal. 4th 83, 114 (2000) (citation omitted).  Both elements must be present to find an agreement unconscionable, but courts employ a "sliding scale," whereby a stronger showing on one may make up for a weaker showing on the other.  <u>Id.</u>  "The threshold question in California's unconscionability analysis is 'whether the arbitration agreement is adhesive.'"  <u>Nagrampa v. MailCoups, Inc.</u>, 469 F.3d 1257, 1281 (9th Cir. 2006) (quoting <u>Armendariz</u>, 24 Cal. 4th at 113).  Procedural unconscionability is present where "the arbitration provision was presented on a take-it-or-leave-it basis and . . . was oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.  <u>Id.</u> at 1281 (quoting <u>Flores v. Transamerica HomeFirst, Inc.</u>, 93 Cal. App. 4th 846, 853 (2001)).  The circumstances under which Khraibut received and signed the NDA demonstrate at least that minimal level of procedural unconscionability.

Substantive unconscionability exists where a provision produces "overly harsh" or one-sided" results.  <u>Armendariz</u>, 24 Cal. 4th at 114.  There is no oppression or surprise present in the Arbitration Provision, nor is it overly harsh or so one-sided as to "shock the conscience" and render the Provision unenforceable.  <u>Id.</u>; <u>see also</u> Louangamath Decl. Ex. A at 2.  The Provision is mutual in its application, does not limit relief for a party bringing suit,

does not unfairly subject a party to oppressive arbitration costs (indeed, the Provision assigns those costs to Gravity4, pending an award of attorneys' fees), and does not unfairly limit discovery. Louangamath Decl. at Ex. A. It does grant Chahal the sole ability to alter the terms of the agreement, but that alone does not tip the scale enough to rule that the Provision or NDA as a whole are unenforceable. See generally Armendariz, 24 Cal. 4th 83; Louangamath Decl. Ex., A.

Khraibut argued at the motion hearing that a fee-shifting clause in the Arbitration Provision was substantively unconscionable. See Louangamath Decl. Ex. A. The clause reads: "Chahal or Gravity4 shall pay for the costs o[f] any arbitration; however, [e]mployee acknowledges that the [a]rbitrator may award attorneys' fees and costs to the prevailing party, in addition to other remedies available at law or in equity." Id. (emphasis added). Under California law, any clause in an employment agreement that would impose "substantial forum fees" on an employee in his attempt to vindicate his unwaivable statutory rights is contrary to public policy and therefore substantively unconscionable. See Armendariz, 24 Cal. 4th at 110. As the California Supreme Court instructs, "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." Id. at 110–11; see also Sonic-Calabasas A, Inc. v. Moreno, 57 Cal. 4th 1109, 1144 (2013) (reaffirming Armendariz's prohibition on contractual terms that require an "equal division of costs between employer and employee" in arbitration, and further explaining that the Armendariz rule is not preempted by the FAA).

Indeed, the United States Supreme Court has repeatedly suggested that a court may refuse to enforce a delegation clause, or otherwise refuse to compel statutory claims to arbitration, if the party resisting arbitration would be subject to an unfair fee-splitting arrangement or would otherwise face significant forum fees in arbitration. In Rent-A-Center, the Supreme Court recognized that a sufficiently robust challenge to arbitration fee-splitting could invalidate an arbitration clause, and specifically a delegation clause. See Rent-A-

United States District Court
For the Northern District of California

Center, 561 U.S. at 74 (holding that a litigant could have challenged substantive unconscionability of delegation clause by showing that he was subject to an "unfair[] . . . fee-splitting arrangement," but noting that the plaintiff "did not make any argument specific to the delegation provision").  In American Express Co. v. Italian Colors Rest., the Court expressly acknowledged that a provision in an arbitration agreement that provides for "administrative fees attached to arbitration that are so high as to make access to the forum impracticable" may well be unenforceable.  133 S. Ct. 2304, 2310–11 (2013) (citing Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 90 (2000)).

At the motion hearing, Khraibut offered three cases in support of his argument that fee-shifting in the Arbitration Provision made the provision substantively unconscionable: Mohamed, 2015 WL 3749716, Galen, 2015 WL 7734137, and Trivedi v. Curexo Tech. Corp., 189 Cal. App. 4th 387 (2010).  These cases are distinguishable.

In Mohamed, plaintiffs were able to show that they would be subject to hefty fees of a type that they would not face in court if the court forced them to arbitrate arbitrability pursuant to their delegation clause.  See Mohamed, 109 F. Supp. 3d at 1207.  But the arguments there related to administrative fees (JAMS retainer fees, daily arbitrator costs, etc.), whereas in the instant case, Gravity4 explicitly agreed to pay the "costs o[f] any arbitration."  See Louangamath Decl., Ex. A.  Additionally, the Mohamed defendant only agreed to split the fees if the venue jurisdiction's laws required it, and there is no such language in the Arbitration Provision before the Court.  See id.  Thus, the facts and decision in Mohamed do not point to any additional substantive unconscionability in this case.

In Galen, the substantively unconscionable elements were (1) a fee-shifting clause; (2) possible application of the AAA commercial rules; (3) a distant forum clause; and (4) a Washington state choice of law clause.  See generally Galen, 2014 WL 7734137.  Only the fee-shifting applies here.  The Galen arbitration agreement provided that the "prevailing party shall have and recover reasonable attorney fees, in addition to all costs and disbursements . . . ."  Id. at *9.  The Galen court found the arbitration provision unconscionable because it required the loser to pay costs and fees despite California's law

United States District Court
For the Northern District of California

1    only permitting fee-shifting in favor of prevailing <u>plaintiffs</u> or <u>employees</u> on certain claims.

2    <u>See</u> <u>id.</u>

3         In assessing the elements of substantive unconscionability, the <u>Armendariz</u> categorical

4    approach directs that the employer bears the arbitral costs on claims based on violations of

5    California's Fair Employment and Housing Act (FEHA).  <u>See</u> <u>Armendariz</u>, 24 Cal. 4th at 99

6    n.5.  The problem in <u>Galen</u> was a provision that allowed a winning <u>defendant</u> or <u>employer</u> to

7    recover costs and fees, infringing on the plaintiff's inviolable statutory right and rendering

8    the provision substantively unconscionable.  <u>See</u> <u>Galen</u>, 2015 WL 7734137, at *9.  However,

9    this did not relate to the shifting of attorneys' fees, and it was a mandatory award.  <u>See</u> <u>id.</u>

10   Further, the Arbitration Provision here gives the arbitrator discretion over the award of fees

11   and costs when directed by California law as set forth in the choice of law clause.  <u>See</u>

12   Louangamath Decl., Ex. A.[10]

13        <u>Galen</u> does give some guidance on other issues.  For example, according to <u>Galen</u> and

14   other decisions from this District, a reference to the AAA's rules "can be sufficient to

15   constitute clear and unmistakable intent to delegate" and "an actual copy of the rules does not

16   need to be provided."  <u>Id.</u> at *6 (citing <u>Bernal v. Sw. & Pac. Specialty Fin., Inc.</u>, No. 12-

17   5797-SBA, 2014 WL 1868787, at *4 (N.D. Cal May 7, 2014) (Armstrong, J.), <u>Kimble</u>, 2011

18   WL 2175249, at *2–4, and <u>Clarium Capital</u>, 2009 WL 331588, at *5.[11]

19        The substantive unconscionability in <u>Trivedi</u> took two forms: (1) another <u>mandatory</u>

20   attorneys' fees provision in favor of the prevailing party "because it placed [plaintiff

21

22        [10]Though the <u>Galen</u> court found the delegation clause unconscionable due to its impermissible

23   cost-shifting, it also found that the clause was severable.  <u>Galen</u>, 2015 WL 7734137, at *7.  The Court
     finds that severance is not necessary here.

24        [11]While a failure to attach the desired rules can, in some circumstances, increase the level of
     procedural unconscionability (<u>see</u> <u>Samaniego v. Empire Today LLC</u>, 205 Cal. 4th 1138, 1146 (2012);

25   <u>Trivedi</u>, 189 Cal. 4th at 393; <u>Zullo v. Super. Ct. (Inland Valley Publ'g Co.)</u>, 197 Cal. 4th 477, 485–86
     (2011)), some recent California cases suggest that incorporation of rules without attaching them is not

26   evidence of procedural unconscionability.  <u>See</u> <u>Peng v. First Republic Bank</u>, 219 Cal. 4th 619, 632–33
     (2013) (failure to attach rules; "<u>standing alone</u>, [was an] insufficient ground[] to support a finding of

27   procedural unconscionability" (emphasis added); <u>Bigler v. Harker Sch.</u>, 213 Cal. 4th 727, 737 (2013).
     Further, "[c]ourts in this district have found that the failure to attach a copy of the rules, so long as the

28   rules are referenced, is not fatal."  <u>Galen</u>, 2015 WL 773413t, at *8 (citing <u>Howard v. Octagon, Inc.</u>, No.
     13-1111-PJH, 2013 WL 5122191, at *15 (N.D. Cal. Sept. 13, 2013)).

employee] at greater risk that if he retained the right to bring his FEHA claims in court"; and (2) a "carve-out" provision allowing only the employer to access the courts for injunctive relief.  See generally Trivedi, 189 Cal. App. 4th 387.  The latter is clearly not present in the Arbitration Provision before the Court, and the Provision's fee-shifting clause is not mandatory.  Thus, neither element bears on the facts or analysis in the instant case, and does not render the Arbitration Provision substantively unconscionable.

The NDA states that an arbitrator "may" award fees and costs.  See Louangamath Decl. Ex. A.  California law allows a prevailing party to recover discretionary attorneys' fees and costs when he brings claims under FEHA.  Cal. Gov. Code § 12695(b).  Attorneys' fees awards under FEHA "are intended to provide 'fair compensation to the attorneys involved in the litigation at hand and encourage[] litigation of claims that in the public interest merit litigation."  Chavez v. City of L.A., 47 Cal. 4th 970, 984 (2010).  The United States Supreme Court has held that in Title VII cases, a prevailing plaintiff should ordinarily recover fees unless special circumstances would render the award unjust, whereas a prevailing defendant may recover attorneys' fees only when the plaintiff's action was frivolous, unreasonable, without foundation, or brought in bad faith.  See Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 416–17, 421–22 (1978).  California courts have adopted that rule for attorneys' fees awards under FEHA.  See Chavez, 47 Cal. 4th at 985.

An arbitration agreement "cannot be made to serve as a vehicle for the waiver of statutory rights created by the FEHA."  Armendariz, 24 Cal. 4th at 101.  But again, the problem in Trivedi was the "mandatory" nature of the fee award clause, in that automatically awarding fees to a potentially prevailing defendant employer would disincentivize a plaintiff from pursuing a meritorious claim in the first place.  Trivedi, 189 Cal. App. 4th at 394.  That is not the case here.  Khraibut brings FEHA claims, but the fee-shifting provision allows the arbitrator to exercise his discretion and requires the him to adhere to California law—which includes FEHA and Armendariz and its progeny.  See Cal. Gov. Code §§ 129000 et seq.; Armendariz, 24 Cal. 4th 83.  Thus, there is no concern that the provision lacks the "frivolous, unreasonable . . ." language in Christiansburg because there is no mandatory award or cost-

shifting to rein in: "Employee acknowledges that the Arbitrator <u>may award</u> attorneys' fees and costs to the prevailing party . . . ."  Louangamath Decl., Ex. A; <u>Christiansburg</u>, 434 U.S. at 421–22.

The central concern in FEHA or Title VII cases involving arbitration and fee-shifting is taking care to preserve an employee plaintiff's statutory rights to remedies available through the courts.  Mandatory cost- and fee-shifting provisions generally violate this tenet,[12] but the Court finds no such substantive unconscionability in the wording of the Arbitration Provision in this case.  The fee-shifting provision here is discretionary, in line with California law, does not deny Khraibut any rights, and therefore does not render the Arbitration Provision or its delegation to the AAA substantively unconscionable.  Because the Arbitration Provision lacks substantive unconscionability, it is not unconscionable as a whole.  <u>See</u> <u>Armendariz</u>, 24 Cal. 4th at 114 (both prongs must be present).

### D.    Statement of Recent Decisions

Khraibut recently filed a "Statement of Recent Decisions" (dkt. 30) to alert the Court to a decision in <u>Carbajal v. CWPSC, Inc.</u>, No. G050438, 2016 WL 757552 (Cal. Ct. App. Feb. 26, 2016) (Aronson, J.).  In that case, the California Court of Appeal agreed with the lower court that an arbitration provision was procedurally unconscionable as a contract of adhesion and because the employer failed to (1) identify which AAA rules would apply; (2) provide the plaintiff with a copy of those rules; and (3) to inform her where should could find the governing rules or give her an opportunity to decide which rules would apply.  <u>Carbajal</u>, 2016 WL 757552, at *1.  The appellate court found substantive unconscionability (1) in the provision's distinction between injunctive relief and other relief, impermissibly allowing different remedies in arbitration than would be available in court; (2) in allowing the employer to seek injunctive relief without posting a bond; and (3) in waiving the employee's statutory right to attorneys' fees.  <u>Id.</u>  The <u>Carbajal</u> agreement also had a class-action waiver, a liquidated damages clause, and a cost of arbitration fee-splitting arrangement.  <u>Id.</u>, at *1.

---

[12]<u>See</u> <u>Nagrampa</u>, 469 F.3d at 1285 (holding that "to the extent [a] fee-splitting provision may impede [plaintiff] from vindicating statutory rights, it would be unenforceable and illegal under California law as contrary to public policy").

<b>United States District Court</b><br>For the Northern District of California

The lower court was not able to sever the provision because the unconscionability permeated the rest of the agreement.  Id., at 14–15.  Carbajal is distinguishable and not persuasive.

First, the FAA applies in our case, and did not apply in Carbajal.  Id. at *3–4.  Second, as with the cases above that Khraibut referenced at oral argument, there is no distinction in the instant case between the types of relief available to Khraibut and to Defendants under the Arbitration Provision.  There is no "carve-out" for Gravity4's potential injunctive relief claims that could deny Khraibut a form of relief that he might receive in court.  Third, the Carbajal agreement required the parties to carry their own attorneys' fees, which only amounts to another species of impermissible mandatory fee shifting described above.  Id., at *2.  Arbitration provisions are substantively unconscionable where they deny a plaintiff statutory rights that he otherwise would receive in court.  Id., at 13; Cal. Gov. Code § 12940 et seq.  In Carbajal's case, she would have been entitled to recover fees under several of her causes of action for employment wrongs, and forcing her to carry her own fees denied her that recovery.  That is not the case with the provision before the Court.  It is not mandatory or unilateral, but puts signatories on notice that an arbitrator may award fees—in accordance with California law—which Khraibut would receive in a court should he have prevailed there.  See Louangamath Decl. Ex. A.  Finally, the Carbajal court found that the employer's failure to attach a copy of the AAA's Rules and tell the plaintiff which specific set of rules apply led only to a "moderate level of procedural unconscionability" when paired with the contract's adhesive nature.  See Carbajal, 2016 WL 757552, at *10.  The reasoning in Carbajal is grounded in a distinguishable set of facts, and while the failure to attach the AAA Employment Rules paired with the adhesive nature of the Arbitration provision might create a "moderate" amount of procedural unconscionability, there is insufficient substantive unconscionability to deny arbitration.  Thus, Carbajal does not guide the Court's decision in this case.

//

//

//

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel Arbitration is GRANTED. The case shall be STAYED pending the AAA's adjudication of the arbitrability issue in accordance with its rules.

**IT IS SO ORDERED.**


Dated: March 18, 2016

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE