1
2
3
4
5
6
7

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

YOUSEF KHRAIBUT,

Case No.  15-cv-04463-CRB

9

Plaintiff,

10

v.

**ORDER GRANTING MOTION FOR
DEFAULT JUDGMENT**

11

GURBAKSH CHAHAL, et al.,

12

Defendants.

13        Plaintiff Yousef Khraibut has moved for default judgment against Defendants

14   Gurbaksh Chahal and Gravity4, Inc.  He seeks $4,421,428.49 in damages and $560,742 in

15   attorneys' fees and costs.  The Court grants Khraibut's motion with a reduced damage

16   award of $1,246,950.20, plus $538,492 in attorneys' fees and costs.

17        The Courts finds that Khraibut asserted valid claims against Chahal and Gravity4

18   and that the standard for entering default judgment is otherwise met.  The Court reduces

19   the damages award because, at least in some instances, the requested award is excessive

20   based on cases involving comparable facts.  The Court also reduces attorneys' fees because

21   one of Khraibut's lawyers has not provided enough justification for his $1,750 hourly rate.

**I.        BACKGROUND**

**A.        Statement of Facts**

24        Plaintiff Yousef Khraibut was hired by Defendant Gurbaksh Chahal to work at

25   Chahal's start-up, Defendant Gravity4, in 2014.  Compl. ¶ 5 (dkt. 1).  Khraibut had already

26   created and sold a multi-million dollar company, and left his home in Ontario, Canada to

27   work as head of design for Chahal and Gravity4 in San Francisco, California.  Id. ¶ 25.

28        Khraibut alleges as follows: Khraibut was promised a senior management role, 1%

equity in Gravity4 with immediate vesting, housing accommodations, work immigration sponsorship, and a $6,000 per month salary.  Id. ¶¶ 41–42.  Chahal and Khraibut orally agreed to these terms, and Khraibut never received or signed any employment documents, as there was little administrative infrastructure when he joined the company.  Id. ¶¶ 42, 44.  Chahal denied Khraibut's repeated requests for a written employment agreement and work visa sponsorship, and at one point suggested that Khraibut become authorized to work in Bermuda or Ireland while continuing to work in the United States.  Id. ¶¶ 66, 72.

While Khraibut was working at Gravity4, Chahal subjected him to ridicule, discrimination and harassment, threats of physical violence, and daily abuse.  Id. ¶¶ 174–82, 223, 227, 233.  Khraibut frequently expressed concern orally and in writing about Chahal's treatment of employees, including pressuring employees to drink heavily, consume prescription Adderall, and take the drug MDMA.  Id. ¶¶ 132–34.  Chahal often used ethnic slurs in the workplace, including calling Khraibut an "Arab ghetto," "habibi ghetto," and a "terrorist" both privately and in front of coworkers.  Id. ¶¶ 84–85.  Chahal also made derogatory remarks about Khraibut's Muslim religion.  Id. ¶¶ 178, 283.  Further, on multiple occasions, Chahal lifted Khraibut's shirt, slapped his stomach, and made derogatory remarks about his body hair and Arab ethnicity in front of others.  Id. ¶¶ 176–77, 283.  Chahal also threatened to "beat him," "break his teeth," stick a knife between his teeth, track him down, and have him "taken care of."  Id. ¶¶ 210, 229, 248.

The abuse went beyond insults and threats.  Chahal ordered employees to install keystroke monitoring software on other employees' computers, including Khraibut's personal computer.  Id. ¶¶ 256, 325; Mot. for Default Judgment at 24 (dkt. 90).  Chahal falsely accused Khraibut of stealing intellectual property and called him a "hacker" to Gravity4 employees and business associates.  Compl. ¶¶ 245–46.  And Chahal directed a Gravity4 employee to send an email to *Business Insider* accusing Khraibut of extortion.  Id. ¶ 271; Mot. at 26.

Chahal and Gravity4 withheld pay, a written employment agreement, and immigration sponsorship while subjecting Khraibut to this treatment.  Compl. ¶¶ 7, 174–

82, 223, 227, 233.  After Chahal threatened Khraibut with deportation and violence and fired him, Khraibut left the country and returned to Canada.  Id. ¶¶ 158, 172, 191, 203, 209, 214, 229, 240–74.  But, due to continuing threats from Chahal, Khraibut still feared for his life and left Canada to go "into hiding for months."  Id. ¶ 241.  Because of the violent threats, the San Francisco Police Department obtained a criminal protective order for Khraibut against Chahal in October 2014.  Id. ¶ 242.  Despite the protective order, Chahal continued to harass Khraibut by attempting to interfere in his business ventures and directing Gravity4 employees to file false police reports against Khraibut.  Id. ¶¶ 263–67.

### B.   Procedural History

On September 28, 2015, Khraibut filed a complaint against Chahal and Gravity4 asserting claims for (1) workplace discrimination and harassment in violation of the Fair Employment and Housing Act ("FEHA"), (2) failure to prevent harassment and discrimination in violation of the FEHA, (3) breach of contract, (4) failure to provide accurate wage statements in violation of California Labor Code Section 226, (5) fraudulent misrepresentation in violation of Labor Code Section 970, (6) retaliation for reporting unsafe work conditions in violation of Labor Code Section 6310, (7) wrongful termination in violation of public policy, (8) unfair business practices in violation of California's Business and Professions Code, (9) defamation *per se*, (10), intrusion upon seclusion, and (11) intentional infliction of emotional distress.

Defendants' counsel accepted service and successfully moved to compel arbitration. First Dhillon Decl. ¶ 24 (dkt. 90-1); see Mot. to Compel Arbitration (dkt. 15); Order Granting Mot. to Compel Arbitration (dkt. 31).  But Defendants failed to respond to Khraibut's numerous requests to select an arbitrator and schedule arbitration, and the American Arbitration Association administratively closed the arbitration.  Grewal Decl. ¶¶ 6, 9 (dkt. 58-1).  On November 27, 2018, the Court granted Khraibut's motion seeking an order (1) requiring Defendants to show cause for their failure to defend, and (2) terminating arbitration.  See Order Granting Admin. Mot. (dkt. 59).  The Court ordered Defendants to appear on December 7, 2018, and to show cause why the Court should not

enter judgment against them for failure to defend.  Id.

On November 29, 2018, Chahal filed a pro se response requesting that the hearing be continued until March 2019 because he was incarcerated.  See First Mot. to Continue (dkt. 62).  The Court granted the continuance and rescheduled the hearing for March.  See Order Granting Continuance (dkt. 68).  On February 27, 2019, Chahal moved for another continuance so that he could seek medical treatment.  See Second Mot. to Continue (dkt. 70).  The Court granted that continuance as well, and reset the hearing to June 14, 2019. See Order Granting Second Continuance (dkt. 72).  On June 10, 2019, Chahal moved for yet another continuance, which Khraibut opposed.  See Third Mot. to Continue (dkt. 73); Opp. to Third Mot. to Continue (dkt. 74).  The Court reset the hearing to July 12, 2019, but warned that it would move the hearing again only after a substantial showing of good cause.  See Order Granting Third Continuance (dkt. 76).  When Chahal moved to continue the hearing once more, the Court denied his motion.  See Fourth Mot. to Continue (dkt. 77); Order Denying Fourth Continuance (dkt. 79).

No Defendants appeared at the hearing.  See Minute Entry (dkt. 81).  The Court thus entered default against Defendants on July 12, 2019 for failure to defend.  See id.  On November 6, 2020, Khraibut moved for default judgment under Rule 55(b) of the Federal Rules of Civil Procedure.  See Mot. (dkt. 90).  He seeks $4,982,170.49, which includes compensatory damages of $1,857,703.39, statutory damages of $63,725.10, punitive damages of $2,500,000, costs of $350, and attorneys' fees of $560,392.  Supp. Br. at 1 (dkt. 102).

Khraibut served Defendants with copies of all the moving papers at the last known address listed on the docket.  First Dhillon Decl. ¶ 28.  But the last four mail notices sent by the Court to Chahal were returned as undeliverable, including the notice that Khraibut was filing a Motion for Default Judgment.  See Mail Returned as Undeliverable (dkt. 82–84, 91).  On January 1, 2021, the Court ordered Khraibut to file a Certificate of Service indicating that he has served the Motion for Default Judgment on Defendants.  See Order Re Certificate of Service (dkt. 92).  On January 29, 2021, Khraibut filed a Certificate of

4

Service indicating that an employee of Dhillon Law Group served Defendants via certified mail sent on January 11, 2021 at their last known address.  See Certificate of Service (dkt. 95).[1]

## II.    LEGAL STANDARD

Upon an entry of default, the factual allegations of the plaintiff's complaint are taken as true, except those relating to damages.  See Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 702 (9th Cir. 2008).

In determining whether to enter default judgment, the Court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties," In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999), including whether notice has been adequately given, see Fed. R. Civ. P. 55(a); Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987); accord Dytch v. Bermudez, 2018 WL 2230945, at *2 (N.D. Cal. May 16, 2018).  If a defendant has appeared personally or through a representative, that defendant must be served with written notice of the application for default judgment at least seven days before the hearing.  Fed. R. Civ. P. 55(b)(2).

To determine whether default judgment is appropriate, courts in the Ninth Circuit weigh the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the likelihood of obtaining a decision on the merits.  Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## III.   DISCUSSION

To analyze this motion for default judgment, the Court must determine whether (A) it has jurisdiction, (B) Defendants have been given adequate notice, (C) the Eitel factors support the entry of default judgment, and (D) the remedy that Khraibut seeks is

---

[1] On February 29, 2021 the Court ordered Khraibut to provide further information about allocation of damages, the financial position of Defendants, and attorney billing records.  See Order to Show Cause (dkt. 98).  In response, Khraibut filed a supplemental briefing and supporting declarations. Supp. Br. (dkt. 102); Fleming Decl. (dkt. 103); Geragos Decl. (dkt 101).

United States District Court
Northern District of California

1   appropriate.  The Court concludes that it has jurisdiction, that Defendants have been given

2   adequate notice, that the <u>Eitel</u> factors support the entry of default judgment, and that a

3   reduced damages and attorneys' fee award is appropriate.

### A. Jurisdiction

5   The Court accepts the jurisdictional facts pleaded in the complaint as true.  <u>See</u>

6   <u>TeleVideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917–18 (9th Cir. 1987).

7   District courts have subject-matter jurisdiction over civil cases between citizens of a

8   State within the United States and citizens of a foreign state when the amount in

9   controversy exceeds $75,000, exclusive of interest and costs.  <u>See</u> 28 U.S.C. § 1332(a)(2).

10   Diversity jurisdiction requires complete diversity, meaning that "each plaintiff must be of a

11   different citizenship from each defendant."  <u>Grancare, LLC v. Mills ex rel. Thrower</u>, 889

12   F.3d 543, 548 (9th Cir. 2018).  A corporation's citizenship is its state of incorporation and

13   the state of its principal place of business.  <u>See</u> 28 U.S.C. § 1332(c)(1).  A natural person's

14   citizenship is determined by domicile.  <u>See</u> <u>Kanter v. Warner-Lambert Co.</u>, 265 F.3d 853,

15   857 (9th Cir. 2001).  For jurisdiction purposes, diversity of citizenship is evaluated at the

16   time the action was brought.  <u>Rockwell Int'l Corp. v. United States</u>, 549 U.S. 457, 473

17   (2007).

18   The Court has subject-matter jurisdiction over this case.  First, the parties satisfy the

19   complete diversity requirement.  At the time Khraibut brought this action, Khraibut was a

20   citizen of Kuwait and Canada.  Compl. ¶¶ 10, 16.  Chahal was a citizen of California.  <u>Id.</u>

21   ¶¶ 11, 16.  Gravity4, a corporation incorporated under the laws of Delaware with its

22   principal place of business in San Francisco, California, was a citizen of Delaware and

23   California.  <u>Id.</u> ¶¶ 13, 16.  Second, the amount in controversy exceeds $75,000, as stated in

24   the Complaint and as evidenced by the Motion for Default Judgment seeking millions in

25   damages.  Compl. ¶ 16; Mot. at 2.

26   The Court also has personal jurisdiction over Chahal and Gravity4.  California's

27   long-arm statute allows courts to exercise personal jurisdiction over defendants to the

28   extent permitted by the Due Process Clause of the United States Constitution.  <u>See</u> Cal.

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1    Code Civ. P. § 410.10.  Accordingly, the Court "need only determine

2    whether personal jurisdiction in this case would meet the requirements of due

3    process." Brainerd v. Governors of the Univ. of Alberta, 873 F.2d 1257, 1258 (9th

4    Cir.1989).  A court may exercise general personal jurisdiction over a corporation in the

5    state where it has its principal place of business, and over an individual in the state where

6    the individual is domiciled.  Ranza v. Nike, Inc., 793 F.3d 1059, 1069 (9th Cir. 2015);

7    Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–16 (1984).  A court

8    may exercise specific personal jurisdiction over a defendant that has "certain minimum

9    contacts" with the forum state "such that the maintenance of the suit does not offend

10   traditional notions of fair play and substantial justice." Shaffer v. Heitner, 433 U.S. 186,

11   203 (1977) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

12       Khraibut alleges that Chahal was, at all times relevant to the complaint, a resident of

13   San Francisco and domiciled in California.  Compl. ¶ 11.  Khraibut also alleges that

14   Gravity4 has its principal place in business in San Francisco, California.  Id. ¶ 13.  Thus,

15   the Court has general personal jurisdiction over Defendants.  In any event, all of

16   Defendants' alleged conduct occurred in California, such that the Court may exercise

17   specific personal jurisdiction over Defendants.

18       **B.      Notice**

19       If the defaulting party has appeared in the action, the moving party must serve the

20   defaulting party with written notice of the application for default judgment at least seven

21   days before any hearing on the application.  Fed. R. Civ. P. 55(b)(2).  The party or the

22   party's representative must be served in writing, but Rule 55 does not require a specific

23   form of notice.  Id.; 10 Moore's Federal Practice - Civil § 55.33 (2020).  Rule 5(b) of the

24   Federal Rules of Civil Procedure provides that service is proper upon an attorney or party

25   when it is delivered directly to the person or mailed to the person at his last known address.

26   Fed. R. Civ. P. 5(b); Ringgold Corp. v. Worrall, 880 F.2d 1138, 1142 (9th Cir. 1989).

27       When filing a pleading or motion with the Court, the plaintiff is required to include

28   a signed Certificate of Service.  Fed. R. Civ. P. 5(a), (d).  Civil Local Rule 5-5 provides

that the filing must include either "an acknowledgment of service by the person served" or a "certificate of service stating the date, place and manner of service and the names street address or electronic address of the persons served, certified by the person who made service."  Civil L.R. 5-5; Henry Schein, Inc. v. Cook, 191 F. Supp. 3d 1072, 1080 (N.D. Cal. 2016) ("The certificate of service must describe the efforts made at service and when the efforts were made.")

Khraibut has satisfied these requirements.  Although the last four mail notices sent by the Court to Chahal were returned as undeliverable, on January 29, 2021, Khraibut filed a Certificate of Service indicating that an employee of Dhillon Law Group served Defendants at their last known address via certified mail sent on January 11, 2021.  See Certificate of Service.

## C.    Eitel Factors

When determining whether to enter default judgment, courts examine the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the likelihood of obtaining a decision on the merits.  Eitel, 782 F.2d at 1471–72.

### 1.    Possibility of Prejudice to the Plaintiff

Generally, a plaintiff would be prejudiced if, without the default judgment, the plaintiff would be "without other recourse or recovery."  Penpower Tech. Ltd. v. S.P.C. Tech., 627 F. Supp. 2d 1083, 1089 (N.D. Cal. 2008).

Here, Khraibut accurately contends that that Defendants have "continually refused to litigate this lawsuit."  Mot. at 15–16.  Khraibut has no apparent way to recover from Defendants outside this lawsuit.  See Mot. at 16.  Thus, the first Eitel factor weighs in favor of default judgment.

2.      **The Merits; and**
3.      **The Sufficiency of the Complaint**

The second and third <u>Eitel</u> factors are analyzed together and focus on the merits of the plaintiff's individual claims; the Court considers whether the plaintiff has alleged sufficient facts to plausibly state each claim.  <u>Eitel</u>, 782 F.2d at 1471–72.  Here, Khraibut asserts claims for (1) workplace discrimination and harassment in violation of the FEHA, (2) failure to prevent harassment and discrimination in violation of the FEHA, (3) breach of contract, (4) failure to provide accurate wage statements in violation of California Labor Code Section 226, (5) fraudulent misrepresentation in violation of Labor Code Section 970, (6) retaliation for reporting unsafe work conditions in violation of Labor Code Section 6310, (7) wrongful termination in violation of public policy, (8) unfair business practices in violation of California's Business and Professions Code, (9) defamation *per se*, (10), intrusion upon seclusion, and (11) intentional infliction of emotional distress.  As noted below, Khraibut asserts some claims against both Chahal and Gravity4, and other claims against either Chahal or Gravity4.

a.      **Workplace Discrimination and Harassment in Violation of the FEHA: Defendant Chahal**

The FEHA prohibits an employer from harassing an employee because of "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or veteran or military status."  Cal. Gov't Code § 12940(j).  A claim for hostile work environment under the FEHA requires that (1) the plaintiff belongs to a protected group, (2) the plaintiff was subjected to unwelcome harassment due to membership in the protected group, and (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.  See <u>Aguilar v. Avis Rent A Car System, Inc.</u>, 21 Cal. 4th 121, 130 (1999).  Further, employees are "personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer… knows or should have known of the conduct and fails to take

1    immediate and appropriate corrective action."  Cal. Gov't Code § 12940(j)(3).

2          Here, Khraibut has alleged that he is a member of three protected groups based on

3    his national origin (Kuwait), religion (Muslim), and ancestry (Arab).  Compl. ¶¶ 10, 178,

4    283.  Khraibut's allegations, including that Chahal regularly made derogatory remarks

5    about his religion and called him a "terrorist" and a "habibi ghetto," among other things,

6    establish that Khraibut suffered harassment because he belonged to these groups.  Id. ¶¶

7    85, 176–80, 182.

8          To show that the harassment was so severe or pervasive that it created a hostile

9    work environment, Khraibut must show that the working environment was "both

10   subjectively and objectively . . . perceived as abusive."  Fuller v. City of Oakland, 47 F.3d

11   1522, 1527 (9th Cir. 1995).  Khraibut alleges that Chahal regularly and publicly used

12   ethnic slurs and engaged in verbal, emotional, and physical abuse; a reasonable person

13   would perceive Chahal's actions as abusive.  Compl. ¶¶ 85, 175–80.  Thus, Khraibut's

14   allegations establish a hostile work environment permeated with discriminatory ridicule.

15         Accordingly, Khraibut has plausibly stated a claim against Chahal for harassment

16   under the FEHA.

17              b.      **Workplace Discrimination and Harassment in Violation of the FEHA: Defendant Gravity4**

18         The FEHA provides that it is illegal for an employer to discriminate against a

19   person because of their national origin, religion, and ancestry.  Cal. Gov't Code §

20   12940(a).  Under the FEHA, a prima facie discrimination claim requires a plaintiff to show

21   that "(1) he is a member of a protected class; (2) he is qualified for his position; (3) he

22   experienced an adverse employment action; and (4) other similarly situated employees

23   outside of the protected class were treated more favorably, or other circumstances

24   surrounding the adverse employment action give rise to an inference of discrimination."

25   Achal v. Gate Gourmet, Inc., 114 F. Supp. 3d 781, 800 (N.D. Cal. 2015); see also Davis v.

26   Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).

27         First, Khraibut alleges that he is a member of three protected groups based on his

28

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1  national origin (Kuwait), religion (Muslim), and ancestry (Arab).  Compl. ¶¶ 10, 178, 283.

2  Second, Khraibut alleges that he was qualified for the position from which he was fired; he

3  was hired as Gravity4's head of design, previously had sold his own company in a multi-

4  million dollar deal, and had established a strategy think tank contracted by the defense

5  sector to design and construct complex digital initiatives.  Id. ¶¶ 26–28.

6      Third, Khraibut alleges that he suffered an adverse employment action in the form

7  of withheld wages and stock options, a withheld work permit, and (eventually) his

8  termination.  Id.  ¶¶ 7, 66, 74, 223.  An adverse employment action is one that "materially

9  affect[s] the compensation, terms, conditions, or privileges of . . . employment."  Davis v.

10  Team Elec. Co., 520 F.3d at 1089.  Such actions include "termination, demotion, failing to

11  promote, denial of an available job, adverse job assignments, official discipline, and

12  significant changes in compensation or benefits."  Id.  Khraibut's termination plainly

13  constitutes an adverse action, and his withheld benefits and pay constitute "significant

14  changes in compensation or benefits."  See id.

15      Fourth, Khraibut's allegations give rise to an inference of discrimination.  Achal,

16  114 F. Supp. 3d at 800; see Davis, 520 F.3d at 1089.  Gravity4 allowed a hostile work

17  environment where Chahal regularly and viciously discriminated against Khraibut and

18  other employees due to their membership in protected groups.

19      Accordingly, Khraibut has alleged facts establishing a prima facie case of

20  harassment under the FEHA against Gravity4.

21
        c.      Failure to Prevent Harassment and Discrimination in
22              Violation of the FEHA: Defendant Gravity4

23      The FEHA provides that it is an unlawful employment practice "for an employer ...

24  to fail to take all reasonable steps necessary to prevent discrimination and harassment from

25  occurring" in the workplace.  Cal. Gov't Code § 12940(k).  Such a claim has three

26  elements: (1) the plaintiff was subjected to discrimination, harassment or retaliation, (2)

27  the defendant failed to take all reasonable steps to prevent discrimination, harassment or

28  retaliation, and (3) the failure caused the plaintiff to suffer injury, damage, loss or harm.

Leland v. City & Cty. of San Francisco, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008); Achal, 114 F. Supp. 3d at 804.  Courts have interpreted these types of claims to be "essentially derivative of a FEHA discrimination claim."  Achal, 114 F. Supp. 3d at 804.

As discussed above, Khraibut has alleged that he was subjected to discrimination and harassment at Gravity4 because of his protected status.  See Compl. ¶¶ 9, 52, 74, 82, 85, 167, 175, 179–80, 268.  Khraibut has adequately alleged that Gravity4 did not take any reasonable steps to prevent discrimination and harassment; indeed, Gravity4 did not have a human resources department or the equivalent.  Id. ¶ 44.  Finally, Khraibut has plausibly alleged that the discrimination and harassment caused Khraibut to suffer extreme mental anguish, emotional distress, humiliation, anxiety, and loss of earnings, other employment benefits, and job opportunities.  Id. ¶¶ 268, 273, 281, 296.  Khraibut suffered humiliation and anxiety, "lived in fear of his life for the months following his harrowing departure from Gravity4," and was never paid by Gravity4 for his work.  Id.

Thus, Khraibut has established a prima facie case for failure to prevent harassment and discrimination in violation of the FEHA.

### d.    Breach of Contract: Defendant Gravity4

A successful breach of contract claim requires (1) the existence of the contract, (2) plaintiff's performance under the contract, (3) defendant's breach, and (4) resulting damages to plaintiff.  E.D.C. Techs., Inc. v. Seidel, 216 F. Supp. 3d 1012, 1015 (N.D. Cal. 2016) (citing Oasis West Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011)).

Khraibut alleges that he and Gravity4 entered into an employment contract and that he performed his duties under the contract by working for Gravity4.  Mot. at 20.  He alleges that Chahal orally offered him one percent of the company's outstanding stock, vesting immediately, with the only condition that Khraibut accept the employment offer and work for Gravity4.  Compl. ¶¶ 42, 300; Mot. at 20.  Khraibut would also receive $6,000 per month salary, rent for an apartment near the office, and immediate employment visa sponsorship.  Compl. ¶ 42.  Defendants breached the contract by refusing to provide Khraibut with visa sponsorship, salary payments, and stock options owed under the

1  contract.  Id. ¶¶ 42, 52, 301, 303–04.

2      Thus, Khraibut's allegations support his breach of contract cause of action.

3              **e.      Failure to Provide Accurate Wage Statements in Violation
                         of California Labor Code Section 226: Defendant Gravity4**

4

5      To state a claim under California Labor Code Section 226 for failure to provide

6  accurate wage statements, a plaintiff must show (1) a "knowing and intentional" violation

7  of Section 226(a) and (2) an injury under Section 226(e).  Willner v. Manpower Inc., 35 F.

8  Supp. 3d 1116, 1128 (N.D. Cal. 2014); Cal. Lab. Code § 226(a), (e).  Section 226(a)

9  requires an employer to provide an accurate, itemized, and written statement with gross

10 wages earned, total hours worked by the employee, and the name and address of the

11 employer's legal entity.  Cal. Lab. Code § 226(a).  Under Section 226(e), an employee "is

12 deemed to suffer injury…if the employer fails to provide a wage statement."  Cal. Lab.

13 Code § 226(e)(2)(A).

14     First, Khraibut has alleged a violation of Section 226(a) because he never received

15 any wage statements.  Compl. ¶¶ 221–23, 227, 308.  The violation was "knowing and

16 intentional" because Khraibut repeatedly asked Chahal for his unpaid wages and Chahal,

17 acting on behalf of Gravity4, refused to give Khraibut wages or an itemized wage

18 statement.  Compl. ¶¶ 221–24, 226–27, 308.  Second, Khraibut did not receive any wage

19 statement (let alone one with complete information), so he suffered an injury under Section

20 226(e)(2)(A).  Mot. at 21; see Cal. Lab. Code § 226(e)(2)(A).

21     Thus, Khraibut's allegations support his claim for failure to provide accurate wage

22 statements under California Labor Code Section 226(a).

23             **f.      Fraudulent Misrepresentation in Violation of California
                         Labor Code Section 970: Defendants Chahal and Gravity4**

24

25     California Labor Code Section 970 provides that an employer may not "influence,

26 persuade, or engage any person to change . . . from any place outside to any place within

27 the State" through knowingly false representations concerning the type, length, or physical

28 conditions of the work.  Cal. Lab. Code § 970; see Tyco Indus. v. Superior Court

United States District Court
Northern District of California

(Richards), 164 Cal. App. 3d 148, 155 (1985).  To adequately plead a violation of Section 970, a plaintiff must show a knowingly false representation about the type, length, or conditions of the employment with the intent to persuade the plaintiff to relocate.  See Aguilera v. Pirelli Armstrong Tire Corp., 223 F.3d 1010, 1019 (9th Cir. 2000).  The plaintiff must also satisfy the heightened pleading requirements applicable to fraud suits under Rule 9(b) of the Federal Rules of Civil Procedure.  Estes v. AlliedSignal, Inc., No. C-97-1810 MHP, 1998 WL 814638, at *15 (N.D. Cal. Nov. 12, 1998); Funk v. Sperry Corp., 842 F.2d 1129, 1133 (9th Cir. 1988).  California Labor Code Section 972 provides that "any person, or agent or officer thereof who violates any provision of section 970 is liable to the party aggrieved, in a civil action, for double damages resulting from such misrepresentations."  Cal. Lab. Code § 972; Singh v. Southland Stone, U.S.A., Inc., 186 Cal. App. 4th 338, 348 (2010) (describing a Section 970 claim against a company and the company's president).

Khraibut was domiciled in Canada before accepting employment at Gravity4 in California.  Compl. ¶¶ 13, 41.  Chahal made false representations about the nature of Khraibut's position, his compensation, and sponsorship of his visa to persuade him to move to California to work for Gravity4.  Id. ¶¶ 51–52, 54, 58, 60–64, 39–42, 72, 47, 222–34, 226–27.

Khraibut's allegations suggest that Chahal knew the statements were false at the time they were made and had no intention of keeping his promises.  Mot at 22.  Khraibut and other employees never received documentation regarding equity compensation.  Compl. ¶ 64.  And, rather than take any steps to sponsor Khraibut's visa, Gravity4 merely provided a letter stating that Khraibut was visiting for personal reasons (to facilitate international travel) and directed Khraibut to apply for work authorization in other countries.  Id. ¶¶ 42, 47, 72.

Thus, Khraibut has plausibly established that both Chahal and Gravity4 are liable under Section 970.

        g.      **Retaliation for Reporting Unsafe Work Conditions in**

United States District Court
Northern District of California

### Violation of California Labor Code Section 6310:
### Defendant Gravity4

California Labor Code Section 6310 provides that an employer may not discharge or discriminate against an employee because the employee has made an oral or written complaint to the employer about unsafe working conditions or practices. Cal. Lab. Code § 6310(b). To state a claim under Section 6310(b), a plaintiff must show: (1) the plaintiff engaged in a protected activity, (2) the defendant subjected the plaintiff to an "adverse employment action"; and (3) a causal link between the adverse employment action and the protected activity. Cuevas v. SkyWest Airlines, 17 F. Supp. 3d 956, 964 (N.D. Cal. 2014), aff'd sub nom. Cuevas v. SkyWest Airlines, Inc., 644 F. App'x 791 (9th Cir. 2016) (citing Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005)).

First, Khraibut engaged in a protected activity by expressing safety concerns about "Chahal's pervasive drug and alcohol abuse" orally and in writing. Compl. ¶¶ 132–35. Chahal repeatedly pressured him and other employees to take illicit drugs and prescription medication. Id. ¶¶ 132, 134. Chahal also verbally threatened Khraibut's physical safety in front of other employees. Id. ¶ 209. Khraibut's complaints about workplace safety were protected activities. See Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th at 1042–43; Ayala v. Frito Lay, Inc., 263 F. Supp. 3d 891, 917 (E.D. Cal. 2017); Cuevas, 17 F. Supp. 3d at 964.

Second, Khraibut suffered an adverse employment action because he was terminated from his employment. Compl. ¶¶ 319–21; see Cal. Lab. Code § 6310(b) (stating adverse employment actions include being "discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against").

Third, Khraibut was terminated, in part, due to his concerns about Gravity4's unsafe working conditions and work practices. Compl. ¶¶ 319–21; Mot. at 24. The necessary causal link between protected activity and an adverse employment action can be established "by an inference derived from circumstantial evidence." Fisher v. San Pedro Peninsula Hosp., 214 Cal. App. 3d 590, 615 (Ct. App. 1989) (citing Jordan v. Clark, 847 F.2d 1368, 1376 (9th Cir. 1988)); Cuevas, 17 F. Supp. 3d at 965 ("Evidence of an

United States District Court
Northern District of California

1  employer's knowledge of the employee's protected activity, where the adverse employment

2  action follows soon after, can be sufficient to support an inference of causation.").

3  Following Khraibut's workplace safety complaints, Chahal stated that he could not trust

4  Khraibut and repeatedly threatened to fire Khraibut (although Chahal had no concerns

5  about Khraibut's performance prior to Khraibut's complaints).  Compl. ¶¶ 135, 213–14,

6  218–19.  It is reasonable to infer that Khraibut was terminated in part because of his

7  complaints.  See Fisher,  214 Cal. App. 3d at 615.

8          Thus, Khraibut's allegations support his retaliatory termination claim.

9                    h.      **Wrongful Termination in Violation of Public Policy:**
10                            **Defendant Gravity4**

11          To state a claim for wrongful termination in violation of public policy under

12  California law, a plaintiff must show: (1) the existence of an employer-employee

13  relationship, (2) the employer terminated the employee, (3) the termination was

14  substantially motivated by a violation of public policy, and (4) the termination harmed the

15  plaintiff.  Nosal-Tabor v. Sharp Chula Vista Med. Ctr., 239 Cal. App. 4th 1224, 1234–35

16  (2015); Merrick v. Hilton Worldwide, Inc., 867 F.3d 1139, 1150 (9th Cir. 2017).  A

17  termination is substantially motivated by a violation of public policy only if the policy is

18  "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that

19  it 'inures to the benefit of the public' rather than serving merely the interests of the

20  individual; (3) well established at the time of discharge; and (4) substantial and

21  fundamental."  Freund v. Nycomed Amersham, 347 F.3d 752, 758 (9th Cir. 2003) (citing

22  City of Moorpark v. Superior Court, 18 Cal. 4th 1143, 1159 (1998)).

23          Because Khraibut has alleged that his termination violated the FEHA and California

24  Labor Code Section 6310, he has also alleged that his termination was substantially

25  motivated by a violation of public policy.  Khraibut was employed and terminated by

26  Gravity4, which caused him harm.  Compl. ¶¶ 42–43, 228, 291, 355.  And a retaliatory

27  termination under California Labor Code Section 6310 constitutes wrongful termination in

28  violation of public policy.  Freund, 347 F.3d at 758; Ferretti v. Pfizer Inc., 855 F. Supp. 2d

16

1017, 1028 (N.D. Cal. 2012).  Additionally, violations of the FEHA based on racial

discrimination are issues of fundamental state public policy.  <u>Kap-Cheong v. Korea</u>

<u>Express, USA, Inc.</u>, No. C 02-4041 CRB, 2003 WL 946103, at *5 (N.D. Cal. Feb. 12,

2003); <u>see</u> <u>Robles v. Agreserves, Inc.</u>, 158 F. Supp. 3d 952, 1009 (E.D. Cal. 2016).

　　　　Thus, Khraibut's allegations support his wrongful termination claim.

### i.　Unfair Business Practices in Violation of California Business and Professions Code Section 17200: Defendants Chahal and Gravity4

　　　　To state a claim under California Business and Professions Code Section 17200, a

plaintiff must allege that the defendant engaged in an "unlawful, unfair or fraudulent

business act."  Cal. Bus. & Prof. Code § 17200; <u>see</u> <u>People ex rel. Bill Lockyer v. Fremont</u>

<u>Life Ins. Co.</u>, 104 Cal. App. 4th 508, 515 (2002).  A plaintiff must plead an underlying

violation of state, federal, or local law for an action under the "unlawful" prong of Section

17200.  <u>Friedman v. AARP, Inc.</u>, 855 F.3d 1047, 1052 (9th Cir. 2017) (citing <u>People ex</u>

<u>rel. Lockyer</u>, 104 Cal. App. 4th).

　　　　Here, as discussed above, Khraibut has alleged that Defendants violated California

Labor Code Section 970, California Labor Code Section 6310, California Labor Code

Section 226 , and the FEHA.  Compl. ¶¶ 41–42, 354; Mot. at 29.

　　　　Thus, Khraibut has stated a Section 17200 claim.

### j.　Defamation: Defendants Chahal and Gravity4

　　　　To state a claim for defamation under California law, a plaintiff must allege an

intentional publication of fact that is false and unprivileged, and that has a natural tendency

to injure or causes special damage.  <u>Price v. Stossel</u>, 620 F.3d 992, 998 (9th Cir. 2010)

(citing <u>Gilbert v. Sykes</u>, 147 Cal. App. 4th 13, 53 (2007)).  "Publication" requires only that

the defendant communicated the statement to "some third person who understands the

defamatory meaning of the statement and its application to the person to whom reference is

made."  <u>Raghavan v. Boeing Co.</u>, 133 Cal. App. 4th 1120, 1132 (2005).  California Civil

Code Section 47 enumerates communications that are "privileged" for purposes of a

United States District Court
Northern District of California

17

defamation claim.  As relevant here, privileged communications include certain employment-related communications, like statements that a former employer makes "without malice" when opining on a job applicant's qualifications or statements answering whether the employer would rehire the former employee.  Cal. Civ. Code § 47(c).

Defamation *per se* occurs when a defendant states that a plaintiff committed a serious crime, has a loathsome disease, is unchaste, or conducted himself in a manner incompatible with his business, trade, profession, or office.  Music Grp. Macao Commercial Offshore Ltd. v. Does, 82 F. Supp. 3d 979, 985 (N.D. Cal. 2015); Balla v. Hall, No. D074804, 2021 WL 48647, at *13 (Cal. Ct. App. Jan. 6, 2021).

### i.  Defamation: Defendant Chahal

Here, Chahal intentionally made false statements about Khraibut, stating that Khraibut was a "hacker," had hacked Defendants, had stolen intellectual property, and had used Chahal's credit cards without authorization.  Compl. ¶¶ 332–37, 340–42.  These statements would support the obvious inference that Khraibut "conducted himself in a manner incompatible with his . . . profession."  See Music Grp. Macao, 82 F. Supp. 3d at 985.  They were also "published" in the relevant sense because Chahal made these statements to business associates and employees who would naturally understand their significance as to Khraibut's fitness to work at a company like Gravity4.  See Compl. ¶¶ 246, 332; Raghavan, 133 Cal. App. 4th at 1132.  These communications were not "privileged" because they were made with "malice" and do not otherwise fit within any of the enumerated employment-related communications that the California legislature has defined as privileged.  See Cal. Civ. Code § 47(c).

Thus, Khraibut's allegations support his defamation cause of action against Chahal.

### ii.  Defamation: Defendant Gravity4

Khraibut also alleges that Chahal's acts should be imputed to Gravity4.  Compl. ¶¶ 336, 341.  The California Supreme Court has explained that an employer may be held liable for an employee's defamatory statement if the employee is "acting in the scope of his authority and in furtherance of the employee's business."  Sanborn v. Chronicle Pub.

18

United States District Court
Northern District of California

1  Co., 18 Cal. 3d 406, 411 (1976) ("This is so even though the agent may have exceeded his
2  express authority…and is true regardless of the agent's motive.").

3      To determine whether an employee is acting within the scope of his employment,
4  California courts consider whether the "risk of such an act is typical of or broadly
5  incidental to the employer's enterprise," and the "employee's activities must be inherent in,
6  typical of or created by the work so that it is a foreseeable risk of the particular
7  employment." Sunderland v. Lockheed Martin Aeronautical Sys. Support Co., 130 Cal.
8  App. 4th 1, 9 (2005).  Although vicarious liability is not appropriate when the tortious
9  conduct arises from a personal dispute, when the employee combines personal and
10 employment business or "attend[s] to both at substantially the same time," the employee is
11 acting within the scope of his employment "unless it clearly appears that neither directly
12 nor indirectly could he have been serving his employer."  See Farmers Ins. Grp. v. Cty. of
13 Santa Clara, 11 Cal. 4th 992, 1006 (1995).  For example, an employee was not acting
14 within the scope of his employment when he used a private email server at work to send
15 another employee anonymous threatening emails, because the messages arose from
16 "personal malice, not engendered by the employment." Delfino v. Agilent Techs., Inc.,
17 145 Cal. App. 4th 790, 813 (2006) (citation omitted).  By contrast, a grocery store manager
18 acted within the scope of his employment during an altercation about an order because "the
19 entire controversy was closely connected with his work . . . even though the altercation
20 involved personal attacks." Stansell v. Safeway Stores, 44 Cal. App. 2d 822, 825–26
21 (1941).  And a construction worker acted within the scope of his employment when
22 throwing a hammer at another worker, because the altercation  was an "outgrowth of
23 [defendant's] employment" and arose "over the performance of [defendant's] duties."
24 Carr v. Wm. C. Crowell Co., 28 Cal. 2d 652, 653, 656–57 (1946).

25      Here, Chahal's statements were within the scope of his employment as CEO, and
26 their ad hominem nature does not remove them from the scope of his employment.
27 Compl. ¶ 47; see Meester v. Davies, 11 Cal. App. 3d 342, 346 (Ct. App. 1970); Neal v.
28 Gatlin, 35 Cal. App. 3d 871, 876 (Ct. App. 1973).  Statements that Khraibut stole

Gravity4's intellectual property and "hacked" the company arose from Khraibut's employment and indicated that Chahal was serving the employer by protecting its intellectual property.  Compl. ¶¶ 332–37; <u>see</u> <u>Carr</u>, 28 Cal. 2d at 656–57; <u>Farmers Ins. Grp.</u>, 11 Cal. 4th at 1006–08.

Thus, Chahal's statements were within the scope of his employment at Gravity4, such that Gravity4 is also liable for those statements.

### k.  Intrusion Upon Seclusion: Defendants Chahal and Gravity4

#### i.  Intrusion Upon Seclusion: Defendant Chahal

To state a claim for intrusion upon seclusion under California law, a plaintiff must allege (1) a defendant's intentional intrusion into a "place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy" and (2) that the intrusion occurred in a manner "highly offensive to a reasonable person."  <u>In re Facebook, Inc. Internet Tracking Litig.</u>, 956 F.3d 589, 601 (9th Cir. 2020) (quoting <u>Hernandez v. Hillsides, Inc.</u>, 47 Cal. 4th 272, 286 (2009)).

Under the first prong, although "privacy expectations may be significantly diminished in the workplace, they are not lacking altogether."  <u>Hernandez</u>, 47 Cal. 4th at 288.  An employer "may have sound reasons for monitoring the workplace," but that does not mean an employer has carte blanche to monitor all the activities of every employee.  <u>See id.</u> at 290.  Thus, "courts have examined the physical layout of the area intruded upon, its relationship to the workplace as a whole, and the nature of the activities commonly performed in such places."  <u>Id.</u>  Areas "reserved exclusively for performing . . . inherently personal acts" are protected.  <u>Id.</u>

Here, although Khraibut's allegations do not implicate privacy intrusions in physical space, they plainly establish an intrusion into Khraibut's personal digital space. Khraibut alleges that Chahal directed employees of Gravity4 to install spyware on his personal computer, which gave Chahal access to Khraibut's private correspondences, passwords, email, and social media accounts.  Compl. ¶ 325.  This was an intrusion into a

United States District Court
Northern District of California

United States District Court
Northern District of California

1  place (if a virtual place) where Khraibut had a reasonable expectation of privacy.  C.f.

2  People v. Evensen, 4 Cal. App. 5th 1020, 1026 (2016) (explaining that, in the Fourth

3  Amendment context, "[c]omputer users generally have an objectively reasonable

4  expectation of privacy in the contents of their personal computers."); see also Hernandez,

5  47 Cal. 4th at 294 (finding a reasonable expectation of privacy in a semi-private office in

6  which defendants had installed a hidden video camera to monitor employer computer

7  activity); compare TBG Ins. Servs. Corp. v. Superior Court, 96 Cal. App. 4th 443, 452

8  (2002) (finding a diminished expectation of privacy in use of work computer when

9  plaintiff signed a release allowing monitoring).

10      Under the second prong, the intrusion must be "highly offensive to a reasonable

11  person" and "sufficiently serious and unwarranted" to constitute an "egregious breach of

12  … social norms."  Hernandez, 47 Cal. 4th at 295 (internal quotations omitted).  In

13  conducting this inquiry, courts consider the intrusion's degree and setting, and the

14  intruder's motives, including whether there is a "reasonable justification" for the intrusion.

15  Id. at 295–97.

16      Here, the intrusion was highly offensive and an egregious breach of social norms.

17  Today, intruding on a personal computer can expose a wealth of sensitive personal

18  information.  Indeed, the general social order now depends to some degree on people being

19  able to maintain the privacy of their digital lives.  The degree of the intrusion was severe

20  because the spyware tracked all of Khraibut's computer activity, and the intrusion was not

21  reasonably justified because Chahal's motive was to find evidence to blackmail and surveil

22  Khraibut and other employees.  Compl. ¶¶ 136, 138–39, 256–57.  The intrusion into

23  Khraibut's personal computer here is particularly alarming given Chahal's threats against

24  Khraibut.

25      Thus, Khraibut's allegations support his intrusion upon seclusion claim against

26  Chahal.

27          **ii.      Intrusion Upon Seclusion: Defendant Gravity4**

28  Khraibut contends that Gravity4 is also liable for Chahal's intrusion upon his

seclusion.  In California, employers are vicariously liable for employee actions that are committed within the scope of the employment.  <u>John R. v. Oakland Unified Sch. Dist.</u>, 48 Cal. 3d 438, 447 (1989).  Employee conduct is within the scope of employment if the conduct either "(1) is required by or incidental to the employee's duties, or (2) it is reasonably foreseeable in light of the employer's business."  <u>Montague v. AMN Healthcare, Inc.</u>, 223 Cal. App. 4th 1515, 1521 (2014), <u>as modified on denial of reh'g</u> (Mar. 13, 2014); <u>see</u> <u>also</u> <u>Alma W. v. Oakland Unified Sch. Dist.</u>, 123 Cal. App. 3d 133, 139 (Ct. App. 1981) ("If an employee's actions fall within the range of actions covered by either part of this two-prong test, the employer will be liable for the wrong, even though the employee has acted maliciously and intentionally.").  An employee's actions are "reasonably foreseeable" when, "in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business."  <u>Farmers Ins. Grp.</u>, 11 Cal. 4th at 1004 (emphasis omitted).

Here, Chahal directed another employee to install spyware on Khraibut's computer to search for "evidence of abuse of prescription and illegal drugs, information to blackmail other individuals, and to surveil his employees when they were not at work."  Mot. at 25. Chahal may have had partly personal motives, but employee monitoring was one of Chahal's duties as CEO.  <u>See</u> <u>Meester v. Davies</u>, 11 Cal. App. 3d at 346.  Indeed, spyware was also installed on other employees' computers, which supports the inference that Gravity4 could have reasonably foreseen this intrusion.  <u>See</u> Mot. at 11, 25; <u>Farmers Ins. Grp.</u>, 11 Cal. 4th at 1004.

Thus, Gravity4 is also liable for intrusion upon seclusion.

### l.    Intentional Infliction of Emotional Distress (IIED): Defendants Chahal and Gravity4

#### i.    IIED: Defendant Chahal

To state a claim for intentional infliction of emotional distress under California law, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous, and

the defendant intended to cause, or recklessly disregarded the probability of causing, emotional distress; (2) the plaintiff suffered severe emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct.  Ferretti v. Pfizer Inc., 855 F. Supp. 2d 1017, 1029 (N.D. Cal. 2012) (citing Cochran v. Cochran, 65 Cal. App. 4th 488, 494 (1998)).

First, Khraibut has alleged extreme and outrageous conduct.  Outrageous conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  Lappin v. Laidlaw Transit Inc., 179 F. Supp. 2d 1111, 1126 (N.D. Cal. 2001) (quoting Cervantez v. J.C. Penney Co., 24 Cal. 3d 579, 593 (1979)).  Khraibut's allegations satisfy this standard.  For example, Chahal regularly harassed Khraibut because of his religion and national origin and threatened his physical safety, at one point threatening to beat Khraibut, knock his teeth out, and "have him taken care of."  Compl. ¶¶ 9, 85, 167, 175–80, 182, 229, 248–49, 268.  Chahal also threatened to have Khraibut deported on multiple occasions while withholding his job salary and benefits.  Id. ¶ 233.  And Chahal directed another employee to file a false police report claiming that Khraibut had stolen an iPhone with the intention of causing further emotional distress.  Id. ¶ 262.

Chahal also intended to cause Khraibut emotional distress.  A defendant must have "intended to inflict injury" or realize that injury would result.  Hughes v. Pair, 46 Cal. 4th 1035, 1051 (2009).  Chahal's statements—particularly the racial epithets—had no purpose aside from causing Khraibut emotional distress.  The statements are pervasive enough to establish that Chahal knew they would emotionally harm Khraibut and that he intended to do so.  The statements also provide context for Chahal's other conduct, like threatening Khraibut with deportation and filing a police report against him.  Such conduct had numerous improper purposes, one of which was to cause Khraibut emotional distress.

Second, Khraibut suffered severe emotional distress.  For emotional distress to be severe, it must be so extreme that "no reasonable person in civilized society should be expected to endure it."  Id. at 1051; Fletcher v. W. Nat'l Life Ins. Co., 10 Cal. App. 3d 376, 397 (Ct. App. 1970) ("The intensity and duration of the distress are factors to be

considered in determining its severity.").  Physical distress is not required, and emotional distress can consist of negative mental reactions such as "fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry."  Fletcher, 10 Cal. App. 3d at 397.  Khraibut contends that he was humiliated, feared for his life and physical safety due to "extreme and graphic threats of violence," and suffered as his "peace of mind and reputation [were] shattered."  Compl. ¶¶ 177, 240–41, 268, 273.  He also alleges that Defendants' conduct forced him to go into hiding.  Id. ¶¶ 268, 274, 351.  The San Francisco Police Department issued a criminal protective order for Khraibut against Chahal due to Chahal's threats.  Id. ¶ 242.  Needless to say, the stress that Khraibut alleges he endured was severe, and he would not have suffered this emotional damage but-for Chahal's outrageous conduct.

Thus, Khraibut's allegations support his claim for intentional infliction of emotional distress against Chahal.

### ii.      IIED: Defendant Gravity4

Khraibut contends that Gravity4 is vicariously liable for Chahal's actions constituting intentional infliction of emotional distress.  In California, employers are vicariously liable for employee actions that are committed within the scope of the employment.  John R., 48 Cal. 3d at 447.  Employee conduct is within the scope of employment if it is "required by or incidental to the employee's duties" or "reasonably foreseeable in light of the employer's business."  Montague, 223 Cal. App. 4th at 1521.

Here, although Chahal's threats of violence and racial harassment appear to be inflicted out of "personal malice, not engendered by the employment" see Farmers Ins. Grp., 11 Cal. 4th at 1005, the fact that Chahal's actions included personal attacks does not remove them from the scope of Chahal's employment because the actions were closely connected with Chahal's position at Gravity4.  See Stansell v, 44 Cal. App. 2d at 825–26. Further, Chahal's other conduct that intentionally inflicted emotional distress upon Khraibut was plainly connected to Chahal's employment.  For example, Chahal's threat to withhold Khraibut's work visa was related to Chahal's duties as a manager at Gravity4.

1   And at least some of Chahal's violent threats came in response to Chahal's requests for his

2   agreed-upon compensation.  In sum, Chahal's conduct was intertwined with his duties as

3   CEO.

4        Thus, Khraibut's allegations are sufficient to support an IIED claim against

5   Gravity4.

6                                                    *

7        Having assessed all of Khraibut's claims for relief, the Court concludes that each

8   one has merit and is adequately pleaded.

9            **4.        Sum of Money at Stake in the Action**

10       Under the fourth <u>Eitel</u> factor, courts consider "the amount of money at stake in

11   relation to the seriousness of Defendant's conduct." <u>KKMI Sausalito, LLC v. Vessel "Self</u>

12   <u>Inflicted"</u>, 428 F. Supp. 3d 200, 208 (N.D. Cal. 2019).  "A default judgment is only

13   disfavored when a large amount of money is involved or is unreasonable in light of

14   Defendant's actions." <u>Id.</u>; <u>see</u> <u>also</u> <u>Yelp Inc. v. Catron</u>, 70 F. Supp. 3d 1082, 1099–100

15   (N.D. Cal. 2014) (explaining that "courts should be hesitant to enter default judgments in

16   matters involving large sums of money").  But when the sizable damages are tailored to the

17   defendant's specific misconduct, default judgment may nonetheless be appropriate.  <u>Yelp</u>

18   <u>Inc.</u>, 70 F. Supp. 3d at 1099–100.

19       As discussed in greater detail below, <u>see</u> section III.D, Khraibut seeks a total

20   judgment of $4,982,170.49, which includes compensatory damages, statutory damages,

21   punitive damages, and attorneys' fees and costs.  Mot. at 2.  Such a large damages award

22   weighs against entering default judgment.

23       Courts balance the amount of damages against the other <u>Eitel</u> factors.  <u>See</u>

24   <u>Craigslist, Inc. v. Naturemarket, Inc.</u>, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010)

25   (holding that the damages in the range of one to five million dollars did not defeat entry of

26   default judgment when the defendant had engaged in willful infringement and refused to

27   respond to allegations in the lawsuit).  Although the award sought here is substantial, every

28   other factor weighs in favor of default judgment.  Moreover, Khraibut has provided the

United States District Court
Northern District of California

1
2
3

Court with a breakdown of the damages for each claim, tailoring the requested award to Defendants' specific misconduct.  See Mot. at 32–38; Supp. Br. at 1–10.  Thus, the amount of damages sought does not outweigh the other Eitel factors supporting default judgment.

4

### 5.    Possibility of a Dispute Concerning Material Facts

5
6
7
8
9
10

Under the fifth Eitel factor, courts analyze the likelihood of a dispute concerning material facts; in doing so, courts must consider whether defaulting parties would be able to dispute material facts if they appeared.  Elec. Frontier Found. v. Glob. Equity Mgmt. (SA) Pty Ltd., 290 F. Supp. 3d 923, 947 (N.D. Cal. 2017); see Levi Strauss & Co. v. Toyo Enter. Co., 665 F. Supp. 2d 1084, 1097 (N.D. Cal. 2009) (finding it "unlikely Defendants would be able to present facts raising any dispute as to these allegations").

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, there is little possibility of a factual dispute.  Chahal raised one minor factual dispute in a response to one of the Court's previous orders to show cause, contending that Khraibut was paid $20,000 for approximately two months of work.  Response to Order to Show Cause, Chahal ¶¶ 6, 13–14.  But Chahal has not provided further detail or evidence supporting this assertion, has not filed an opposition to the motion for default judgment, and generally appears to have abandoned this litigation.  See Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (holding that there was no "serious dispute concerning the material facts" when defendant filed a conclusory answer asserting affirmative defenses with no specific facts contradicting allegations in the complaint and defendant had not filed an opposition to the motion for default judgment); IO Grp., Inc. v. Jordon, 708 F. Supp. 2d 989, 999–1000 (N.D. Cal. 2010) (holding that, although the defendant appeared in the action and filed three documents, his failure to present evidence that contradicted the factual allegations in the complaint weighed in favor of entry of default judgment).  Because Defendants have failed to oppose the entry of default judgment or otherwise present evidence to dispute material facts, despite having ample opportunity to do so, there is little possibility of a factual dispute.  See Vietnam Reform Party v. Viet Tan - Vietnam Reform Party, 416 F. Supp. 3d 948, 970 (N.D. Cal. 2019).

United States District Court
Northern District of California

26

1    Accordingly, this factor weighs in favor of default judgment.

2    **6.     Whether the Default was Due to Excusable Neglect**

3    Under the sixth <u>Eitel</u> factor, courts evaluate whether the default was due to

4    excusable neglect.  <u>Eitel</u>, 782 F.2d at 1472.  In analyzing this factor, courts look to whether

5    the defendants had notice based on proper service.  <u>See</u> <u>Yelp Inc.</u>, 70 F. Supp. 3d at 1100;

6    <u>Craigslist</u>, 694 F. Supp. 2d at 1061; <u>Levi Strauss & Co.</u>, 665 F. Supp. 2d at 1097;

7    <u>Penpower Tech. Ltd.</u>, 627 F. Supp. 2d at 1093.

8    Here, Defendants accepted service of the summons and complaint through counsel.

9    First Dhillon Decl. ¶ 24.  And, although several recent court mailings to the Defendants

10   have been returned as undeliverable, Defendants' earlier participation in this lawsuit (along

11   with Khraibut's certification that Defendants have been served with the instant motion)

12   indicate that they have had ample opportunity to defend themselves.  Thus, there is no

13   reasonable possibility that Defendants' failure to do so was based on excusable neglect.

14   Therefore, this factor weighs in favor of default judgment.

15   **7.     Likelihood of Obtaining a Decision on the Merits**

16   Under the last <u>Eitel</u> factor, courts examine whether the strong policy underlying the

17   Federal Rules of Civil Procedure favoring decisions on the merits weighs against entering

18   default judgment.  <u>Eitel</u>, 782 F.2d at 1472.  Generally, default judgments are disfavored,

19   and a case should be decided on the merits whenever possible.  <u>Pena v. Seguros La</u>

20   <u>Comercial, S.A.</u>, 770 F.2d 811, 814 (9th Cir. 1985); <u>Craigslist, Inc.</u>, 694 F. Supp. 2d at

21   1061.  But when a defendant's failure to appear, respond, or participate in the action

22   "makes a decision on the merits impracticable, if not impossible," entry of default

23   judgment is warranted.  <u>Craigslist, Inc.</u>, 694 F. Supp. 2d at 1061.

24   Here, Defendants received notice that arbitration had been waived and terminated,

25   have not filed an answer, filed numerous motions to postpone the Order to Show Cause

26   hearing but did not appear at the hearing, and have not contested the entry of default

27   judgment against them.  Mot. at 32.  Were this litigation to continue, it is unlikely that

28   there would ever be a decision on the merits.

United States District Court
Northern District of California

*

In sum, the <u>Eitel</u> factors support granting Khraibut's motion for default judgment. Therefore, the motion is granted.

**D.     Scope of Relief**

With Defendants' liability resolved, the Court must determine the remedy.  <u>See Craigslist, Inc.</u>, 694 F. Supp. 2d at 1061.  The court has discretion to award appropriate damages, and the party seeking default judgment has the burden of establishing that the requested relief is appropriate.  <u>NewGen, LLC v. Safe Cig, LLC</u>, 840 F.3d 606, 617 (9th Cir. 2016); <u>Geddes v. United Fin. Group</u>, 559 F.2d 557, 560 (9th Cir.1977).

Khraibut seeks compensatory damages of $225,500, statutory damages of $650, and punitive damages of $1,000,000 from Gravity4.  Supp. Br. at 1.  Khraibut seeks statutory damages of $63,075.10 from Chahal.  <u>Id.</u>  Khraibut seeks the following damages jointly and severally against Gravity4 and Chahal: compensatory economic damages of $132,203.39, compensatory noneconomic damages of $1,500,000, punitive damages of $1,500,000, costs of $350, and attorneys' fees of $560,392.  <u>Id.</u>

The Court holds that Gravity4 is individually liable for $389,300 (including $194,650 in punitive damages), Chahal is individually liable for $31,500, and Defendants are jointly and severally liable for $826,150.20 (including $413,075.10 in punitive damages).  Defendants are also jointly and severally liable for $538,492 in attorneys' fees and costs.

**1.     Gravity4's Individual Liability**

Gravity4 is individually liable for FEHA workplace discrimination and harassment and failure to prevent harassment, breach of contract, fraudulent misrepresentation, and failure to provide accurate wage statements, and the Court may award separate damages for each cause of action.  Gravity4 is also individually liable for (1) retaliation for reporting unsafe working conditions and (2) wrongful termination in violation of public policy, but these causes of action may give rise to only one award because they stem from the same conduct (and, below, the Court concludes that any damages arising from these

28

two causes of action would be redundant based on Khraibut's other claims).  Finch v. Brenda Raceway Corp., 22 Cal. App. 4th 547, 555–56 (1994).

### a.      FEHA Claims

Khraibut requests $144,000 in compensatory damages for Gravity4's FEHA violations: workplace discrimination and harassment, and failure to prevent discrimination and harassment.  See sections III(C)(2–3)(b)–(c).  Remedies available under the FEHA include front pay, see Salas v. Sierra Chem. Co., 59 Cal. 4th 407, 420 (2014), i.e., monetary damages for "lost compensation during the period between judgment and reinstatement or in lieu of reinstatement."  Cifuentes v. Costco Wholesale Corp., 238 Cal. App. 4th 65, 70 (2015).  Khraibut's request for $144,000 represents front pay for two years of Khraibut's salary at Gravity4.  Supp. Br. at 1–2.  This amount is reasonable, and the Court awards Khraibut $144,000 in compensatory economic damages against Gravity4 based on Gravity4's FEHA violations.

### b.      Breach of Contract

Khraibut requests $50,000 in compensatory damages for Gravity4's breach of contract regarding equity compensation.  Supp. Br. at 4–5.  Under California law, a person who breaches a contract is liable for damages proximately caused by the breach.  Cal. Civ. Code § 3300.  Khraibut was promised one percent of Gravity4's outstanding stock, which he never received.  See section III(C)(2–3)(d).  Although discovery limitations restricted Khraibut from determining the exact value of the stock he was promised, Khraibut has provided evidence that $50,000 is a reasonable estimate.  Supp. Br. at 4–5.  The Court thus awards Khraibut $50,000 in compensatory economic damages against Gravity4 based on Gravity4's breach of contract.

### c.      Failure to Provide Accurate Wage Statements: California Labor Code Section 226(a)

Khraibut requests statutory damages of $650 from Gravity4 for its failure to supply wage statements.  An employee suffering an injury under Section 226(a) is "entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in

1   which a violation occurs and one hundred dollars ($100) per employee for each violation

2   in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars

3   ($4,000)." Cal. Lab. Code § 226(e)(1).

4        Here, Gravity4 violated California Labor Code Section 226(a) by not providing

5   Khraibut with any wage statements when he was employed at Gravity4. <u>See</u> section

6   III(C)(2–3)(e).  Gravity4 was required to provide Khraibut with seven itemized wage

7   statements during his employment, which began on June 22, 2014 and ended on September

8   30, 2014.  Supp. Br. at 2.  Khraibut is entitled to $50 for the first violation and $100 each

9   for the six subsequent violations.  Accordingly, the Court awards Khraibut $650 in

10  statutory damages against Gravity4 based on Gravity4's failure to provide wage

11  statements.

### d.   Retaliation for Reporting Unsafe Working Condition (California Labor Code Section 6310) and Wrongful Termination in Violation of Public Policy

14        Khraibut does not request independent awards for his retaliation and wrongful

15  termination claims; he acknowledges that these claims arise from the same conduct and

16  should give rise to a single award.  Supp. Br. at 3–4.

17        Khraibut contends that he is entitled to back pay and front pay under his retaliation

18  for reporting unsafe working conditions and wrongful termination in violation of public

19  policy claims.  <u>Id.</u>  Under California Labor Code Section 6310, an employee who is

20  discharged or discriminated against for engaging in a protected activity–here, Khraibut's

21  complaints about workplace safety–is entitled to "reinstatement and reimbursement for lost

22  wages and work benefits caused by the acts of the employer."  Cal. Lab. Code § 6310(b);

23  <u>see</u> section III(C)(2–3)(g).  Further, the California Supreme Court and the Ninth Circuit

24  have held that common law remedies, including front pay and emotional damages, are

25  available for wrongful termination claims, even when wrongful termination is premised on

26  a Section 6310 cause of action.  <u>See</u> <u>Freund</u>, 347 F.3d at 759–60; <u>Rojo v. Kliger</u>, 52 Cal.

27  3d 65, 80 (1990); <u>Stevenson v. Superior Ct.</u>, 16 Cal. 4th 880, 909 (1997).

28

United States District Court
Northern District of California

Here, Khraibut's claim for backpay arises from the same facts alleged in his Unfair Business Practices claim, addressed below.  See section III(D)(3)(c).  Khraibut's claim for front pay arises from the same facts alleged in his FEHA claims.  See section III(D)(1)(a). Thus, the Court does not award separate or individual damages for Khraibut's retaliation and wrongful termination causes of action.

\*

Accordingly, the Court holds Gravity4 individually liable for $194,650.  This amount comprises statutory damages of $650 and compensatory economic damages of $194,000.  As discussed further below, the Court also holds Gravity4 liable for $194,650 in punitive damages, for a total of $389,300.

### 2.      Chahal's Individual Liability

Chahal is individually liable for special statutory damages for fraudulent misrepresentation under California Labor Code Section 972.

### a.      Fraudulent Misrepresentation: California Labor Code Section 970

Khraibut requests $31,500 in noneconomic damages for his California Labor Code Section 970 fraudulent misrepresentation claim, which he asserted against both Chahal and Gravity4.  Supp. Br. at 4.  But Chahal has some individual liability arising from this claim given Section 972's special damages provision.

California Civil Code Section 3359 states that "[d]amages must, in all cases, be reasonable."  Cal. Civ. Code § 3359.  Emotional damages resulting from intentional misrepresentation need not be accompanied by a physical injury.  See Finch v. Brenda Raceway Corp., 22 Cal. App. 4th 547, 554 (1994).

Khraibut claims that he suffered emotional distress, including mental anguish, emotional and physical distress, humiliation, anxiety, and fear for his life, because of Defendants' misrepresentations.  Mot. at 33.  Khraibut requests noneconomic damages of $450 per day that he worked for Gravity4 (70 days), which totals $31,500.  Id.  The amount Khraibut requests is reasonable.  See George v. Kasaine, No.

United States District Court
Northern District of California

1  CV1402863ABMRWX, 2015 WL 12850722, at *8 (C.D. Cal. May 5, 2015) (awarding

2  $400 per day of work based on similar facts).[2]

3          When an individual is liable for violating Section 970, the plaintiff's damages

4  resulting from the misrepresentation are determined and then doubled by the court.  See

5  Seubert v. McKesson Corp., 223 Cal. App. 3d 1514, 1523 (1990); George v. Kasaine, No.

6  CV1402863ABMRWX, 2015 WL 12850722, at *9 (C.D. Cal. May 5, 2015) (doubling

7  unpaid wages, noneconomic damages, and medical expenses resulting from

8  misrepresentation).

9          As discussed above, Chahal is individually liable for his misrepresentations, see

10  Cal. Lab. Code § 972; Singh v. Southland Stone, U.S.A., Inc., 186 Cal. App. 4th 338, 348

11  (2010) (Section 970 claim against company and president of company), and those

12  misrepresentations caused $31,500 in harm that is not redundant with Khraibut's other

13  claims.  The Court awards double damages of $63,000 individually against Chahal.  To

14  avoid duplicative recoveries, Chahal and Gravity4 will be jointly and severally liable for

15  $31,500 in damages; Chahal will be individually liable for the $31,500 in damages that

16  make up his double-damages liability.

17                                          *

18          Accordingly, the Court holds Chahal individually liable for $31,500 in statutory

19  damages.

20              **3.    Joint and Several Liability**

21          Chahal and Gravity4 are jointly and severally liable for fraudulent

22  misrepresentation, intrusion upon seclusion, defamation, IIED, and for violating

23  California's Unfair Business Practices statute.

24              **a.    Fraudulent Misrepresentation: California Labor Code**

25

26  [2] Khraibut also requests economic damages for backpay, which the Court addresses under section

27  III(D)(3)(c) because the claim arises from the same conduct as his Unfair Business Practices
   claim.  Supp. Br. at 4; see Finch, 22 Cal. App. 4th at 555–56 (no separate damages for claims

28  arising from the same conduct because the damages would be redundant).

**Section 970**

As discussed above, Chahal and Gravity4 are jointly and severally liable for $31,500 in statutory damages for fraudulent misrepresentation.  See section III(D)(2)(a).

### b.    Intrusion Upon Seclusion

Khraibut lumped his request for emotional damages arising from intrusion upon seclusion together with his request for such damages arising from IIED.  See Supp. Br. at 6.  Thus, the Court does not award separate or individual damages for intrusion upon seclusion, but considers the relevant conduct in its IIED analysis below.

### c.    Defamation *Per Se*

Khraibut requests compensatory economic damages of $100,000 for injury to his reputation in connection with his defamation cause of action.  Supp. Br. at 6.  As stated above, the controlling standard for tort damages is that they must be reasonable.  Cal. Civ. Code § 3359.  When damages are presumed, the Court must award an amount that is reasonable and "just compensation."  See Cal. Civ. Jury Instruction 1704 (2020); see also Lewis v. Hayes, 177 Cal. 587, 591 (1918) (considering factors such as extent of defamation and amount of blame or reprehension).  In a defamation *per se* action, damage to reputation is presumed and the plaintiff does not need to introduce evidence of actual damages.  Contento v. Mitchell, 28 Cal. App. 3d 356, 358 (Ct. App. 1972); Clark v. McClurg, 215 Cal. 279, 284 (1932).  The purpose of the damages is to compensate the victim for the "natural and probable consequences of the libel."  Turner v. Hearst, 115 Cal. 394, 399 (1896); see also Scott v. Times-Mirror Co., 181 Cal. 345, 365 (1919) (considering factors such as "the wide publicity given to the libel, plaintiff's prominence in the community where he lives, his professional standing, his good name and reputation, his injured feelings, and his mental sufferings").

As discussed above, Chahal and Gravity4 are jointly and severally liable for defamation. Although damages are presumed here, the amount that Khraibut requests is excessive.  See Vachani v. Yakovlev, No. 15-CV-04296-LB, 2016 WL 7406434, at *8 (N.D. Cal. Dec. 22, 2016).  Thus, the Court holds Gravity4 and Chahal jointly and

1   severally liable for compensatory damages of $50,000.

2                           **d.      IIED**

3          Khraibut requests that Chahal and Gravity4 be held jointly and severally liable for

4   noneconomic emotional damages of $1,500,000 for his intentional infliction of emotional

5   distress claim, which incorporates the harm that Chahal suffered in relation to his intrusion

6   upon seclusion claim.  Supp. Br. at 6–7.  The controlling standard for emotional distress

7   damages is that they must be reasonable.  Cal. Civ. Code § 3359; Cal. Civil Jury

8   Instruction 3905A (2020); Fletcher v. W. Nat'l Life Ins. Co., 10 Cal. App. 3d 376, 409 (Ct.

9   App. 1970) (explaining that "there is no fixed or absolute standard by which to compute

10  the monetary value of emotional distress").

11         Khraibut claims that he suffered pain, mental suffering, and distress because Chahal

12  discriminated and harassed him, pressured him to take illegal substances, directed him to

13  lie to the police, retaliated against him for reporting unsafe work conditions, installed

14  spyware in his personal computer, threatened his safety and life with physical violence,

15  filed false police reports against him, and attempted to interfere with business reputation

16  and opportunities.  Mot. at 34. Khraibut contends that he went into hiding due to fear for

17  his life.  Id.

18         An award of $300,000 is reasonable based on the specific conduct at issue here,

19  including the threats of physical violence.  Courts have sometimes awarded smaller

20  amounts in the absence of such threats, see, e.g., United States ex rel. Macias v. Pac.

21  Health Corp., No. CV1200960RSWLJPR, 2016 WL 8722639, at *12 (C.D. Cal. Oct. 7,

22  2016), but have approved awards in this general range based on emotional harm

23  comparable to Khraibut's, see, e.g., Neal v. Honeywell, Inc., 191 F.3d 827, 832 (7th Cir.

24  1999) (upholding a $200,000 award when the plaintiff was subjected to physical threats

25  ); Townsend v. Bayer Corp., 774 F.3d 449, 466-67 (8th Cir. 2014) (upholding a $300,000

26  award when the plaintiff suffered from sleepless nights and had severe financial difficulty

27  in supporting his family as a result of the conduct giving rise to liability).  Although at

28  least one court has awarded the $1.5 million in damages that Khraibut seeks, in that case

United States District Court
Northern District of California

the plaintiff produced medical evidence that he had suffered serious "mental health problems" including "a major depressive disorder" and "suicidal thoughts" based on the defendant's conduct.  Yowan Yang v. ActioNet, Inc., No. CV1400792ABPJWX, 2017WL2117028, at *15 (C.D. Cal. Jan. 23, 2017).  Another court reduced a $2 million damage award to $900,000 when an officer of a corporation yelled at and blamed a young woman who had been sexually assaulted.  Crouch v. Trinity Christian Ctr. of Santa Ana, Inc., 39 Cal. App. 5th 995, 1024 (2019), review denied (Dec. 11, 2019).  In the absence of similar circumstances here, a more typical award of $300,000 is appropriate.

As discussed above, Chahal and Gravity4 are jointly and severally liable for IIED. See section III(C)(2–3)(l).  Thus, the Court holds Gravity4 and Chahal jointly and severally liable for compensatory emotional damages of $300,000.

### e.  Unfair Business Practices: Business and Professions Code Section 17200

Khraibut requests backpay and prejudgment interest totaling $31,575.10 against Chahal and Gravity4 in connection with his Unfair Business Practices cause of action. Supp. Br. at 7–8.  The California Supreme Court held that a failure to pay employee wages constitutes an unfair business practice, and that Business and Professions Code Section 17203 allows a Court to direct the employer to pay all earned wages.  Cortez v. Purolator Air Filtration Products Co., 23 Cal. 4th 163, 168, 177 (2000); Cal. Bus. & Prof. Code § 17203.

Here, Gravity4 agreed to pay Khraibut $6000 per month and Khraibut was never paid any wages.  See section III(C)(2–3)(i).  Khraibut worked for Gravity4 from June 22, 2014 to September 30, 2014, and requests $19,600 for the three months and eight days he worked at Gravity4.  Supp. Br. at 7; Mot. at 32–33.  California law also allows interest on all due and unpaid wages, accruing from the date the wages were due.  Cal. Lab. Code § 218.6.  And under California Civil Code Section 3289(b), a contract entered into after January 1, 1986, without an express legal rate of interest, is subject to "interest at a rate of 10 percent per annum after a breach."  Cal. Civ. Code § 3289(b).  Khraibut is thus entitled

United States District Court
Northern District of California

1   to $11,975.10 in prejudgment interest for the 2,230 days between his termination date and

2   the date he filed the motion for default judgment, and $19,600 in backpay for the time he

3   worked for Gravity4.

4          Chahal and Gravity4 may be held jointly and severally liable for backpay and

5   prejudgment interest.  An officer of a corporation may be held individually liable for an

6   unfair business practice if the officer actively participated in the unfair business practice.

7   People ex rel. Harris v. Sarpas, 225 Cal. App. 4th 1539, 1559–62, 1564–65 (2014)

8   (holding the manager of the company and the company jointly and severally liable for

9   restitution).  Chahal explicitly refused to pay Khraibut wages, actively participating in the

10  unfair business practice, and consistently discriminated against and harassed Khraibut.

11  See sections III(C)(2–3)(a)–(c), (i).

12         Thus, the Court holds Chahal and Gravity4 jointly and severally liable for

13  $31,575.10, comprised of backpay and prejudgment interest.

14                                                                    *

15         Accordingly, the Court holds Chahal and Gravity4 jointly and severally liable for

16  $413,075.10 in compensatory damages.

17                    **4.**     **Punitive Damages**

18         To evaluate a request for punitive damages, the Court must (1) determine whether

19  punitive damages are appropriate and (2) determine a reasonable amount of punitive

20  damages.

21         First, punitive damages are appropriate "where it is proven by clear and convincing

22  evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ.

23  Code § 3294.  California Civil Code Section 3294 defines oppression, fraud, and malice.

24  Cal. Civ. Code § 3294(c).  "Fraud" is an intentional misrepresentation of a material fact

25  when the defendant intends to "depriv[e] a person of property or legal rights or otherwise

26  causing injury."  Cal. Civ. Code § 3294(c)(3).  "Malice" is conduct intended to cause

27  injury to the plaintiff or "despicable conduct which is carried on by the defendant with a

28  willful and conscious disregard of the rights or safety of others."  Cal. Civ. Code §

36

1   3294(c)(1).  "Oppression" is despicable conduct that causes the plaintiff's cruel and unjust

2   hardship "in conscious disregard of that person's rights."  Cal. Civ. Code § 3294(c)(2).

3        For an employer to be held liable for punitive damages, a corporation's director,

4   officer, or managing agent must have either (1) known and consciously disregarded, (2)

5   authorized, or (3) ratified the acts of oppression, fraud, or malice.  Cal. Civ. Code §

6   3294(b).  Ratification occurs when the employer "demonstrates an intent to adopt or

7   approve oppressive, fraudulent, or malicious behavior by an employee in the performance

8   of his job duties."  Coll. Hosp. Inc. v. Superior Court, 8 Cal. 4th 704, 726 (1994), as

9   modified (Nov. 23, 1994).

10       Second, there is no fixed standard to determine the appropriate amount of punitive

11  damages, but California courts consider three factors: (1) the reprehensibility of the

12  defendant's conduct, (2) the plaintiff's injury in reasonable relation to the punitive

13  damages, and (3) the defendant's wealth, considering the amount sufficient to punish and

14  deter future wrongful conduct.  Cal. Civ. Jury Instruction 3940, 3943, 3945 (2020); Rufo v.

15  Simpson, 86 Cal. App. 4th 573, 620 (2001).  The purpose of punitive damages is "to

16  punish wrongdoing and deter future misconduct."  Stevens v. Owens-Corning Fiberglas

17  Corp., 49 Cal. App. 4th 1645, 1658 (1996).

18       In evaluating the reprehensibility of the defendant's conduct, courts consider the

19  nature of the harm (whether it was physical as opposed to economic), whether the conduct

20  showed an indifference or reckless disregard of the health or safety of others, whether the

21  target had financial vulnerability, whether the conduct involved repeated actions or was an

22  isolated event, and whether the harm resulted from intentional malice and deceit or mere

23  accident.  Cal. Civ. Jury Instruction 3940 (2020); Roby v. McKesson Corp., 47 Cal. 4th

24  686, 713 (2009), as modified (Feb. 10, 2010); Neal v. Farmers Ins. Exch., 21 Cal. 3d 910,

25  928 (1978) (explaining that "the more reprehensible the act, the greater the appropriate

26  punishment").

27       Evidence of the defendant's financial condition is necessary for a court to determine

28  the appropriate amount of punitive damages, and the burden of producing such evidence is

United States District Court
Northern District of California

1   on the plaintiff.  See Adams v. Murakami, 54 Cal. 3d 105, 109–19 (1991); Devlin v.

2   Kearny Mesa AMC/Jeep/Renault, Inc., 155 Cal. App. 3d 381, 384 (Ct. App. 1984).  The

3   amount awarded should not exceed the level necessary to punish and deter, but should also

4   not allow the defendant to "absorb the award with little or no discomfort."  Rufo, 86 Cal.

5   App. 4th at 620.  California courts consider net worth as the most reliable indicator of a

6   defendant's wealth, but asset and income figures are also relevant.  Devlin, 155 Cal. App.

7   3d at 391.

8        Khraibut requests punitive damages individually from Gravity4 and jointly and

9   severally from Chahal and Gravity4.

10                  **a.        Individual Punitive Damages: Gravity4**

11        Khraibut requests $1,000,000 in punitive damages individually against Gravity4

12   based on the causes of action he asserted only against Gravity4.  Gravity4 committed

13   fraudulent misrepresentation by luring Khraibut to work in California with promises of

14   visa sponsorship.  See Cal. Civ. Code § 3294(c)(3); section III(C)(2–3)(f).  Gravity4

15   withheld Khraibut's work visa and terminated Khraibut without paying him any wages,

16   subjecting Khraibut to cruel and unjust hardship.  See Cal. Civ. Code § 3294(c)(2); section

17   III(C)(2–3)(h).  Thus, punitive damages are appropriate against Gravity4.

18        As for the amount of punitive damages, first, Gravity4's conduct was reprehensible

19   because the company consciously disregarded Chahal's abuse of Khraibut and failed to

20   prevent discrimination of its employees.  Gravity4 caused economic harm to Khraibut by

21   not paying his wages and damaged his emotional health by allowing Chahal to

22   continuously disparage and threaten Khraibut.  See Mot at 36–37.  Gravity4's conduct

23   showed an "indifference or reckless disregard of the health or safety of others" because

24   Gravity4 knew about Chahal's repeated abuse of Khraibut and failed to act.  See Roby, 47

25   Cal. 4th at 713.

26        Second, although Khraibut suffered serious harm, the punitive damages he seeks

27   lack a reasonable relationship to his actual damages.  Rufo, 86 Cal. App. 4th at 623; see

28   also MGW, Inc. v. Fredricks Dev. Corp., 6 Cal. Rptr. 2d 888, 894 (Ct. App.), review

                                            38

granted and opinion superseded, 832 P.2d 586 (Cal. 1992); Cal. Civ. Jury Instruction 3940. Khraibut requests the Court award $1,00,000 in punitive damages. Supp. at 8. Given that Khraibut is entitled to $194,650 in compensatory damages from Gravity4, this large amount does not bear a reasonable relationship to his actual damages. Although punitive-to-compensatory damages ratios greater than single digits can comport with due process "where a particularly egregious act has resulted in only a small amount of economic damages," that is not the case here, and "when compensatory damages are substantial, then an even lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003). Thus, the Court concludes that punitive damages equal to compensatory damages are appropriate here.

Third, to provide evidence of Gravity4's wealth, Khraibut alleges that Chahal claimed that Gravity4 had a market capitalization value of over one billion dollars and a near future initial public offering value of over three billion dollars. Compl. ¶¶ 11, 65. Khraibut also asserts that Gravity4 acquired seven different companies, including Hong Kong's largest digital advertising agency, and made a $350,000,000 bid to purchase another company between July 2015 and March 2015. Fleming. Decl. ¶¶ 7, 10–13 (dkt. 103). Although Khraibut has not been able to provide detailed information regarding Gravity4's current financial status due to the posture of this litigation, Gravity4 has substantial means to pay a reasonable punitive damages award.

Thus, the Court awards Khraibut punitive damages equal to the compensatory damages for which Gravity4 is individually liable: $194,650. This amount does not exceed the amount necessary to punish and deter.

### b.    Joint and Several Punitive Damages

Khraibut requests $1,500,000 in punitive damages jointly and severally against Chahal and Gravity4 in connection with his FEHA harassment, breach of contract, intrusion upon seclusion, defamation, IIED, and Unfair Business Practices causes of action. Supp. Br. at 8. Punitive damages may not be awarded for breach of contract. City

1    of Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 392 (2008); Cal. Civ. Code §

2    3294 (providing that punitive damages are available "for the breach of an obligation not

3    arising from contract").  Punitive damages will be assessed here against Chahal and

4    Gravity4 for intrusion upon seclusion, defamation, IIED, and Unfair Business Practices.

5         Punitive damages are appropriate based on Chahal's conduct because Chahal acted

6    with oppression and malice.  As discussed above, Chahal engaged in regular racial and

7    religious harassment that was malicious and intended to cause Khraibut injury.  See

8    sections III(C)(2–3)(a)–(c); Cal. Civ. Code § 3294(c)(1).  Chahal intentionally invaded

9    Khraibut's privacy and publicly defamed him.  See sections III(C)(2–3)(j)–(k); Cal. Civ.

10   Code § 3294(c)(1)–(2).  And, as discussed above, Gravity4 is liable for much of the same

11   conduct.

12        As for the appropriate amount of punitive damages, first, Chahal's conduct was

13   reprehensible because Chahal engaged in repeated threats of physical violence and

14   intentional, continuous racial harassment.  Mot. at 37–38.  Chahal intruded upon

15   Khraibut's privacy by installing spyware on his personal computer, defamed him and

16   injured his business reputation, violated multiple California labor laws, and repeatedly

17   acted with "intentional malice."  See Roby, 47 Cal. 4th at 713; see generally sections

18   III(C)(2–3)(a)–(k).

19        Second, Khraibut was harmed, but the punitive damages Khraibut seeks lack a

20   reasonable relationship to Khraibut's actual damages.  See Rufo, 86 Cal. App. 4th at 623;

21   Cal. Civ. Jury Instruction 3940.  Khraibut requests the Court award $1,500,000 in punitive

22   damages.  Given that Khraibut is entitled to $413,075.10 from Gravity4 and Chahal for

23   these causes of action—a substantial amount—an award equal to compensatory damages is

24   more appropriate.  See State Farm Mut. Auto. Ins. Co., 538 U.S. at 425.  Thus, the Court

25   awards Khraibut punitive damages equal to compensatory damages.

26        Third, Khraibut has provided sufficient evidence of wealth to allow the Court to

27   determine an award that will punish and deter Defendants.  See Rufo, 86 Cal. App. 4th at

28   620.  Chahal's own social media profiles represent that he has made over $400,000,000

1    through his business transactions.  Fleming Decl. ¶¶ 3–6.  Further, in 2019 Chahal was on

2    California's list of top tax delinquencies, showing he owed about $1.7 million, but Chahal

3    did not appear on the 2020 list, indicating that he paid much or all of these taxes.  Id. ¶ 8.

4    These asset and income figures, and the ones provided for Gravity4 above, are enough to

5    convince the Court that imposing punitive damages equal to compensatory damages is

6    appropriate given Chahal's financial situation.  See Devlin, 155 Cal. App. 3d at 391.

7    Gravity4 and Chahal are jointly and severally liable for these punitive damages

8    because Khraibut's complaints about Chahal and the company's failure to act indicate that

9    the corporation knew and consciously disregarded Chahal's improper conduct.  See

10   sections III(C)(2–3)(a)–(c), (g); Tilkey v. Allstate Ins. Co., 56 Cal. App. 5th 521, 554

11   (2020) ("A company ratifies a managing agent's decision when it knows about and accepts

12   the decision."); Cal. Civ. Code § 3294(b).  Indeed, Chahal, while acting as a managing

13   agent of Gravity4, authorized the invasion of Khraibut's privacy and personally caused

14   Khraibut's emotional distress.  See Cal. Civ. Code § 3294(b); sections III(C)(2–3)(k)–(l).

15   Accordingly, the Court holds Chahal and Gravity4 jointly and severally liable for

16   punitive damages of $413,075.10.

### 5.    Costs and Attorneys' Fees

18   A plaintiff is entitled to recover its costs if default judgment is granted.  Fed. R. Civ.

19   P. 54(d)(1).  Thus, Khraibut is entitled to the $350 in costs he incurred while prosecuting

20   this action.

21   A plaintiff successfully alleging violations of the FEHA, failure to provide accurate

22   wage statements, and actions for nonpayment of wages is entitled to attorneys' fees under

23   California law.  See Cal. Gov't Code § 12965; Cal. Lab. Code § 218.5; Beaty v. BET

24   Holdings, Inc., 222 F.3d 607, 609 (9th Cir. 2000); Andrade, 225 F. Supp. 3d at 1143.

25   Attorneys' fees are calculated using the lodestar method, which multiplies the number of

26   hours reasonably expended by a reasonable hourly rate.  PLCM Grp. v. Drexler, 22 Cal.

27   4th 1084, 1095 (2000), as modified (June 2, 2000); Camacho v. Bridgeport Fin., Inc., 523

28   F.3d 973, 978 (9th Cir. 2008).

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    In determining whether an hourly rate is reasonable, courts look to factors such as "the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." PLCM Grp., 22 Cal. 4th at 1096; see also United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990) (considering affidavits by the plaintiff's attorney about the regular fees in the community, rates in other cases, and evidence of the market rate).

    Khraibut requests $560,392 in attorneys' fees for time spent on this case.[3]  Mot. at 38; First Dhillon Decl. ¶ 22; Supp. at 1; Geragos Decl. (dkt. 101).  A portion of that request amounting to $463,717 represents 949.81 hours of attorney time spent by Dhillon Law Group.  Mot. at 38; First Dhillon Decl. ¶ 22.  Another $96,675 represents 99.5 hours of attorney time spent by Geragos & Geragos.  See Geragos Decl.

    Dhillon Law Group has provided a full breakdown of each attorney's time and hourly rate–these numbers indicate the time spent up until the motion for default judgment was filed.  The Court concludes that they are reasonable.

    Mr. Deol is a second-year associate that had a billable rate of $350 per hour in 2015, which is a reasonable rate.  First Dhillon Decl. ¶13.  Mr. Deol was responsible for client contact, settlement efforts with opposing counsel, and legal research; he spent 21.6 hours on these matters, totaling $5,560.  The rate and number of hours here are reasonable.

    Ms. Baughman was the firm's managing associate in 2015 and is now a partner at the firm.  Id. ¶ 14.  Ms. Baughman's billable rate was $450 an hour in 2015 and 2016, $500 in 2017, $600 in 2018, $650 in 2019, and was $750 in 2020.  Id.  These rates appear to be reasonable.  Ms. Baughman spent 100.9 hours on this matter, totaling $49,270, and was responsible for drafting the complaint and opposition to motion to compel arbitration, communicating with Defendants' counsel, coordinating arbitration, preparing for depositions, preparing discovery requests, and handling hearings.  Id.  Based on the

---

[3] This amount includes the original $463,717 requested in the motion for default judgment and an additional $96,675 requested with Khraibut's supplemental brief.  Supp. Br. at 1; Mot. at 38.

1    breakdown of attorney time, the rate and number of hours here are reasonable.  See Second

2    Dhillon Decl. (dkt. 102-1).

3        Mr. Michael had a billable rate of $300 per hour in 2015 and 2016, $325 in 2017,

4    $350 in 2018, and $400 in 2019.  First Dhillon Decl. ¶ 15.  These appear to be reasonable

5    rates.  Mr. Michael spent 258.11 hours in this matter, totaling $86,250, and was

6    responsible for legal research, drafting initial arbitration briefs and various responses, and

7    preparing deposition outlines.  Id.  Based on the breakdown of attorney time, the rate and

8    number of hours here are reasonable.  See Second Dhillon Decl.

9        Mr. Grewal had a billable rate of $300 per hour in 2015 and 2016, $325 in 2017,

10   and $350 in 2018.  First Dhillon Decl. ¶ 16.  These appear to be reasonable rates.  Mr.

11   Grewal spent 32.3 hours in this matter, totaling $28,938, and was responsible for legal

12   research, helping draft the arbitration briefs, handling administrative motions, preparing

13   deposition outlines, drafting responses, and attending hearings.  Id.  Based on the

14   breakdown of attorney time, the rate and number of hours here are reasonable.  See Second

15   Dhillon Decl.

16       Ms. Dhillon's hourly rate was $550 in 2015, $600 in 2016, $700 in 2017, $800 in

17   2018, $900 in 2019, and her current hourly rate is at least $1,000 for employment matters.

18   First Dhillon Decl. ¶ 17.  These rates appear to be reasonable based on Ms. Dhillon's

19   experience.  Ms. Dhillon worked 471 hours on this case, totaling $289,930, and was

20   responsible for corresponding with the client, communicating with defense counsel,

21   conducting strategy discussions within the firm, and handling pleadings, hearings, and

22   arbitration, including reviewing court filings.  Id.  Although much time was expended, this

23   case has been pending since 2015.  Based on the breakdown of attorney time, the rate and

24   number of hours here are reasonable.  See Second Dhillon Decl.

25       In addition, Mr. Fleming, Mr. Wald, Ms. Yamamoto, and Ms. Toschi played minor

26   roles in the litigation; they collectively spent 47.9 hours leading up to the motion for

27   default judgment, and their hourly rates were between $200 and $300, which is reasonable.

28   Id.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Thus, the Court concludes that Khraibut's request for $463,717 relating to work

2    performed by attorneys at Dhillon law group is reasonable.

3    Geragos & Geragos has also provided a full breakdown of each attorney's time and

4    hourly rate. Here, a reduction is warranted.

5    Mr. Meiselas spent .5 hours on this matter and had a billable rate of $850; this

6    amount is reasonable. Geragos Decl. Mr. Gammill had an hourly rate of $650 in 2018,

7    which appears to be a reasonable rate. See id. Mr. Gammill was responsible for preparing

8    for arbitration, reviewing documents, and corresponding with opposing counsel; he spent

9    70 hours on this matter, totaling $45,000 of attorney time. Id. Based on the breakdown of

10   attorney time, the rate and number of hours here are reasonable. Id.

11   Mr. Geragos had an hourly rate of $1750 in 2018. Id. Although Mr. Geragos is an

12   accomplished attorney, the Court lacks sufficient information to conclude that this high

13   rate was reasonable in relation to the work performed, and the Court thus calculates an

14   adjusted rate of $1000. Mr. Geragos's responsibilities included reviewing discovery

15   documents, reviewing briefs, transcripts, depositions, and exhibits, and corresponding with

16   the client and co-counsel; he spent 29 hours on this matter, which appears reasonable. Id.

17   The rate reduction results in a total reduction of $21,750.

18   Thus, the Court awards Khraibut $538,142 in attorneys' fees.

19                                          *

20   The Court awards Khraibut a total amount of $1,735,442.20. Gravity4 is

21   individually liable for $339,300 (compensatory damages of $194,000, statutory damages

22   of $650, and punitive damages of $194,650). Chahal is individually liable for special

23   damages of $31,500. Defendants are jointly and severally liable for $826,150.20

24   (compensatory damages of $413,075.10 and punitive damages of $413,075.10), plus costs

25   of $350, and attorneys' fees of $538,142.

26   **IV.    CONCLUSION**

27   For the foregoing reasons, the Court **GRANTS** the Motion for Default Judgment

28   with a reduced award.

1

**IT IS SO ORDERED.**

2      Dated: March 26, 2021

3 

CHARLES R. BREYER
United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28